UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARYANNE ZADROWSKI<br>Plaintiff<br><br>VS.<br><br>TOWN OF PLAINVILLE, ET AL..<br><br>Defendants | : CIVIL ACTION NO.<br>: 3:09-CV-1367 (DJS)<br>:<br>:<br>:<br>:<br>:<br>: JUNE 10, 2011<br>: |

## LOCAL RULE 56a(1) STATEMENT

Pursuant to Local Rule 56(a)1, the Defendants Town of Plainville, Chief Daniel Coppinger (Ret.), Captain (formerly Lieutenant) Brian Mullins, Sergeant Richard Marques, Officer Brian Cybulski, Officer Greg Arvai, Officer Shane Phillips and Officer Michael Bisnow hereby submit the following in support of the Motion for Summary Judgment and contends that the following constitute undisputed material facts:

### Preface

1. On October 27, 2009, Richard Bright, who was intoxicated, out of control, and high on marijuana, threatened to kill himself. **Complaint,** dated August 14, 2009 (""Complaint"), ¶ 13; Exhibit A, **Deposition of MaryAnne Zadrowski,** at pg. 15:7;

{00640232.DOC}

**Exhibit B, <u>Deposition of Richard Bright</u>, at pg. 11:6; Exhibit C, <u>Deposition of Walter Zadrowski</u>, at pg. 22:8; Exhibit D, <u>Plainville Police Case #2008-15162</u>, , 27-Oct-2008 at 23:41:38.**

    2. On or about August 14, 2009, Walter Zadrowski resided with his mother, Barbara Zadrowski, at his mother's residence at 129 Shuttle Meadow Road in Plainville, Connecticut [the "Premises"]. **Exhibit C, pg. 11.**

    3. The Premises consist of a house set back approximately one hundred (100) feet from the street. Attached to the back of the house is a porch, which is considered the main entrance to the house. The driveway extends from the street along the right side of the house and to the separate garage in the rear of the Premises, approximately fifty (50) feet further away from the street than the house. **Exhibit C, pg. 11-16.**

    4. If you are in the backyard, you cannot see down the driveway to the street. **Exhibit A, pg. 12-13; Exhibit C, pg. 15-16; Exhibit E, Deposition of Barbara Zadrowski, pg. 24.**

    5. On or about August 14, 2009 and for some period prior, Richard Bright was staying with his uncle "to help…with some things around the farm, and to, like, try and better myself, stay away from drugs and alcohol." **Exhibit B, at pg. 7:7.** *See also* **Exhibit A, at pg. 7.**

{00640232.DOC}

6. On August 14, 2009, Richard Bright arrived at the Premises drunk and high on marijuana. **Exhibit B, at pg. 7; Exhibit C, pg. 19; Exhibit F, Prosecutor's Report; Exhibit G, Voluntary Statement of Walter Zadrowski.**

7. Following the arrival of Richard Bright at the Premises, he and Walter Zadrowski, his uncle, got into an argument in the garage located on the Premises. **Exhibit C, pg. 19; Exhibit F; Exhibit G.**

8. In the course of the conversation, Richard Bright threatened to kill himself. **Exhibit B, at pg. 13; Exhibit C, pg. 22; Exhibit F; Exhibit G.**

9. In response to Richard Bright's statement, Walter Zadrowski offered Richard Bright a .22 caliber rifle. **Exhibit B, pg. 14; Exhibit C, pg. 22-23, Exhibit F; Exhibit G.**

10. Following the conclusion of the argument between Richard Bright and Walter Zadrowski, both individuals had separate conversations to MaryAnne Zadrowski. Walter Zadrowski asked Plaintiff to pick her son up "because he's out of control and I'm not going to deal with it great." **Exhibit C, pg. 26.** *See also* **Exhibit A, pg. 8.** During the course of Richard Bright's conversation with his mother, he stated that he was "going to go to Hartford and get a gun"; **Exhibit B, pg. 30**; with the intent of committing suicide. *See also* **Exhibit A, pg. 15.**

{00640232.DOC}

11. Following these conversations, Plaintiff went to the Premises to retrieve her son. **Exhibit A, pg. 8**. Despite the threats of suicide, Richard Bright was left alone for approximately thirty (30) minutes. *Id.* **at 26; Exhibit C, pg. 27.**

12. At 11:41 P.M on October 27, 2008, Plaintiff contacted the Plainville Police Department requesting that an Officer meet her at "the Getty gas station on Williams Street" and represented that she was in her car with her son, who had threatened to kill himself. **Exhibit D, 27-Oct-2008 at 23:41:28.** Plaintiff agrees to permit officers to come directly to the Premises. *Id.* Plaintiff did not request an ambulance, but now claims that she did. **Exhibit A, pg. 40.**

13. Approximately four minutes after the initial phone call, the dispatcher follows up with the Plaintiff in another phone conversation. **Exhibit D, 27-Oct-2008 at 23:45:44.** The dispatcher inquires as to whether Bright threatened to hurt himself, how he intended to do so, and whether he had access to weapons. *Id.* Plaintiff responds, "I don't know." *Id.* During the course of the conversation, Richard Bright can be heard in the background stating "Wally told me to fucking shoot myself...Wally gave me a fucking gun and said shoot myself in the fucking head." *Id.* Only thereafter does the Plaintiff disclose that weapons are on the Premises. *Id.*

14. In response to this disclosure, the dispatcher informs the responding officers that weapons are present on the Premises. *Id.*

4

15. Three (3) officers responded to the Plaintiff's call – Officers Chase, Phillips and Arvai. **Exhibit F.** Officer Arvai spoke with Richard Bright, who informed them that Walter Zadrowski had offered him a gun in response to Bright's suicidal statement. *Id.* During the course of the investigation, Plaintiff interrupted by yelling, "He said he's going to fucking kill himself. *Id.*

16. At the time the officers arrived, Richard Bright was still intoxicated and "even more" out of control. **Exhibit B, pg. 14.**

17. Following Officer Arvai's conversation with Richard Bright, the officers requested to speak with Walter Zadrowski, who was inside the home on the Premises. **Exhibit C, pgs. 31-32; Exhibit F.** No attempt was made to enter the home. **Exhibit A, pg. 56, Exhibit C, pgs. 31-32; Exhibit F.**

18. Upon his emergence from the house, Walter Zadrowski was asked whether he attempted to provide a weapon to Richard Bright in response to a suicidal statement. **Exhibit C, pgs. 31-32; Exhibit F.** When he responded in the affirmative, the decision was to arrest Walter Zadrowski. **Exhibit F.**

19. Walter Zadrowski was escorted to the side of the house and placed under arrest. **Exhibit C, pg. 39.**

20. During the course of the investigation and contemporaneous with the conversation between the officers and Walter Zadrowski, Plaintiff again contacted the

5

Plainville Police Department requesting the presence of supervising officer "because these cops are flipping the story around over here and they're trying to pin everything on my brother when my son is the one that's drunk and telling him he's trying to kill himself and they're trying to say that my brother handed him a gun." **Exhibit D, 28-Oct-2008 at 00:00:31.** Contrary to the Plaintiff's understanding of the circumstances, that is exactly what happened. **Exhibit G.**

21. At the time of the incident, Brian Mullins was a Lieutenant in the Plainville Police Department. **Exhibit H, Deposition of Brian Mullins, pg. 72-73; Exhibit I, Affidavit of Brian Mullins.** On October 27, 2008, he served as the shift commander for the second shift, which was scheduled for 4:00 P.M. to 12:00 A.M. *Id.*

22. At the time of the incident, Richard Marques was a Sergeant in the Plainville Police Department. **Exhibit H, pg. 74; Exhibit I.** On October 28, 2008, he served as the shift commander for the third shift, which was scheduled for 12:00 A.M. to 8:00 A.M. *Id.*

23. During the course of this conversation, Lieutenant Mullins spoke with the Plaintiff. **Exhibit H, pg. 74; Exhibit I.** On the basis of this conversation, communications with the officers on the Premises and communications with the shift commander for the following shift (Sgt. Marques), Lieutenant Mullins and Sergeant Marques elected to proceed to the scene given the complaints received, the actions of Richard Bright, Walter Zadrowski and MaryAnne Zadrowski and the presence of weapons on the Premises.

6

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
{00640232.DOC}   TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

**Exhibit D, 28-Oct-2008 at 00:07:30, Exhibit H, Deposition of Brian Mullins, pg. 74-78; Exhibit I.**

24. Around this time period, Walter Zadrowski was arrested for Reckless Endangerment, 2nd Degree, in violation of C.G.S. § 53a-64. **Exhibit F.** Walter Zadrowskli was handcuffed and led to a police vehicle parked on the street, approximately 100 feet from the house. **Exhibit C, pg. 40.** Officer Bisnov remained with Walter Zadrowski. **Exhibit F.**

25. After Walter Zadrowski was arrested, Plaintiff again contacted the Plainville Police Dispatcher, stating without introduction "I want a fucking supervisor at 129 Shuttle Meadow Road right fucking now" due to the fact that her brother was being arrested. **Exhibit D, 28-Oct-2008 at 00:07:30.** Plaintiff contends that she did not use profanity until after she was choked. **Exhibit A, pgs. 51, 81.**

26. Upon the arrival of Lt. Mullins and Sgt. Marques, MaryAnne Zadrowski walked halfway down the driveway to meet them. **Exhibit A, pg. 68.** MaryAnne Zadrowski's first words to the officers are "Did I not tell you…no fucking lights?" **Exhibit D, 28-Oct-2008 at 00:07:30.**

27. At the time Sgt. Marques and Lt. Mullins arrived, Richard Bright and MaryAnne Zadrowski were cursing at the officers for arresting her brother. **Exhibit H, pg 80-81.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
{00640232.DOC}
TELEPHONE (860) 525-5361    FACSIMILE (860) 525-4849    JURIS No. 24029

Richard Bright thereafter began to make personal threats against the officers. **Exhibit B, pg. 22; Exhibit F; Exhibit H, pgs. 81-82; Exhibit I.**

28. Given the threats against the officers, a determination was made to arrest Richard Bright for Breach of Peace, Second Degree, and Interfering with an Officer, Threatening, Second Degree. **Exhibit F; Exhibit H, pg. 82; Exhibit I.**

29. Given the representation that Richard Bright was suicidal and intoxicated, Lt. Mullins also had to determine whether Bright should be escorted to a hospital for observation or whether his safety could be preserved at the police department. **Exhibit H, 83-91; Exhibit I.**

30. During the course of this period, while Officer Bisnov is monitoring Walter Zadrowski and Officers Cybulski and Arvai are working with Lt. Mullins to contain Richard Bright, who was admittedly out of control, MaryAnne Zadrowski was standing at the rear of the house, beyond Sgt. Marques, yelling and screaming profanities. **Exhibit H, pg. 91; Exhibit I.**

31. MaryAnne Zadrowski then moved down the driveway towards the arresting officers, continuing to yell and scream profanities. **Exhibit H, pg. 91; Exhibit I.**

32. At the time of the alleged incident, all other officers on scene were engaged in either monitoring Walter Zadrowski or monitoring and arresting Richard Bright. **Exhibit I.**

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
{00640232.DOC}   TELEPHONE (860) 525-5361   FACSIMILE (860) 525-4849   JURIS No. 24029

33. Lt. Mullins saw and heard MaryAnne Zadrowski approaching the arresting officers, and briefly saw Sgt. Marques restrain the Plaintiff. **Exhibit H, pg. 91; Exhibit I.**

34. Given the volatile circumstances, the use of force by Sgt. Marques was necessary to prevent the Plaintiff from interfering with the other officers. **Exhibit I.**

35. The Plainville Police Department maintains a policy prohibiting the use of excessive force. **Exhibit I; Exhibit J, General Order No. 13.**

36. The Plainville Police Department also maintains a policy regarding the use of force continuum. **Exhibit I; Exhibit K, General Order No. 25.**

37. All officers employed by the Plainville Police Department must undergo training at the Police Academy which includes, among other things, classroom and field training on the appropriate use of force, the use of force continuum, human relations, and practical police skills, each of which touches on the prohibition of the use of excessive force. **Exhibit I.**

38. Officers employed by the Town of Plainville are required to undergo recertification periodically, which includes approximately forty (40) hours of training every three years. The classes required of the officers reinforce the practical police procedures, which includes the prohibition on the use of excessive force. *Id.*

39. Officers employed by the Town of Plainville are also provided periodic updates regarding the current status of the law and their duties as police officers, which includes

9

updates on the appropriate use of force, when force may be utilized and the continuing prohibition on the use of excessive force. *Id.*

                DEFENDANTS:

BY /s/ Russell N. Jarem
Russell N. Jarem/Fed. Bar No. ct27848
Gordon, Muir and Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106
Tel: (860)525-5361/Fax: (860)525-4849
Email: rjarem@gmflaw.com

10