**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARYANNE ZADROWSKI | : | CIVIL ACTION NO. |
| *Plaintiff* | : | 3:09-cv-1367 (MRK) |
| | : | |
| V. | : | TRIAL BY JURY |
| | : | |
| TOWN OF PLAINVILLE, CHIEF DANIEL | : | |
| COPPINGER, in his individual and official | : | |
| capacity; LIEUTENANT BRIAN MULLINS, | : | |
| in his individual and official capacity; | : | |
| SERGEANT RICHARD MARQUES, in his | : | |
| individual and official capacity; OFFICER | : | |
| BRIAN CYBULSKI, in his individual and | : | |
| official capacity; OFFICER GREG ARVAI, | : | |
| in his individual and official capacity; | : | |
| OFFICER SHANE PHILLIPS, in his | : | |
| individual and official capacity; OFFICER | : | |
| MICHAEL BISNOV, in his individual and | : | |
| official capacity | : | |
| *Defendants* | : | SEPTEMBER 28, 2011 |

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

The plaintiff, Maryann Zadrowski, opposes the defendants' meritless motion for

summary judgment for the following reasons and respectfully requests that this court

deny said motion. Because the defendants' motion for summary judgment relies on a

version of the events alleged in this case which materially differs from the plaintiff's

account of the defendant officers' actions, and requires that the court choose their

version of events from among conflicting accounts, summary judgment is not

appropriate.

- 1 -

This opposition to summary judgment incorporates the plaintiff's Local Rule 56a2 statement of facts in dispute and supporting affidavits and other exhibits, which are attached hereto.

## I.     FACTS

The plaintiff hereby adopts the facts as state in her Local Rule 56(a)2 Statement.

## II.    ARGUMENT

### A.     LEGAL STANDARD

Summary judgment should only be granted where "there is no genuine issue of material fact to be tried, and the moving party is therefore entitled to judgment as a matter of law." *Root v. Liston*, 44 F.3d 127, 130 (2d Cir. 2006); See Fed. R. Civ. P. 56(c). The burden is on the moving party to establish the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). "Material facts" are facts that "might affect the outcome of the suit under the governing law," and the existence of such facts precludes summary judgment. *Konikoff v. Prudential Insurance Co. of America*, 234 F.3d 92, 97 (2d Cir. 2000). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The court's role on a motion for summary judgment is not to decide disputed

issues of fact but to determine whether there is a genuine issue of fact to be tried." *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). It is up to the trier of fact at trial to make credibility determinations, weigh the evidence, and draw legitimate inferences from the facts, and the court should deny summary judgment where the nonmoving party presents evidence from which a reasonable jury could return a favorable verdict. See, e.g., *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196 (2d Cir. 2004). "[S]ummary judgment is perforce improper where conflicting evidence is adduced." *Patrick v. Le Fevre*, 745 F.2d 153, 160 (2d Cir. 1984).

In determining whether a case presents triable issues of fact, the court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Artis v. Liotard*, 934 F.Supp. 101, 103 (S.D.N.Y. 1996) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). At the summary judgment phase of litigation, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255. Summary judgment is inappropriate even in cases where questions of material fact are doubtful. *Velardi v. Walsh*, 40 F.3d 569, 574 (2d Cir. 1994); *Golino v. New Haven*, 950 F.2d 864, 871-72 (2d Cir. 1991).

## B.    Excessive Force

The defendants' motion for summary judgment on the issue of excessive force is premised on the disputed account of the defendant officers that Sergeant Marques

merely "reached out his arm and prevented the plaintiff from continuing towards the arresting officers." The plaintiff disputes the entire account of the defendant officers regarding her actions prior to Marques's use of force and the manner and degree in which Marques used force against her. The plaintiff maintains, by her own sworn affidavit and those of other witnesses, that she did not advance on the defendant officers during their arrests of Walter Zadrowski and Richard Bright; instead, she informed the officers that she was going to call her attorney. After she announced that she was going to contact her attorney, Sergeant Marques approached the plaintiff from behind and place her in a choke-hold, informing her that she was "not going to fucking call anyone." Sergeant Marques choked the plaintiff so intensely that she could not breathe without difficulty. After choking the plaintiff for several seconds, Marques released the plaintiff, who then fled the officers and retreated inside the house.

Additionally, the defendants attempt to interject irrelevant allegations about the plaintiff's general demeanor at the time that Marques choked her, as if to suggest that even if the plaintiff was not threatening any officer or posing any risk of interference with the officers' arrests of Walter Zadrowski and Richard Bright, Marques was justified in choking her because she was using rude and vulgar language and was generally unpleasant.

The defendants' account of Marques's actions is so diametrically opposed to the accounts of the plaintiff and other witnesses that there is an undeniable dispute as to

the material facts underlying the plaintiff's excessive force claim. The jury, hearing the testimony of the plaintiff and other witnesses in addition to the testimony of the defendants, could credit the plaintiff's account of Marques's assault and reasonably find that Marques had used excessive and unjustifiable force against the plaintiff in violation of her civil rights. For this reason, summary judgment on the plaintiff's excessive force claim is not appropriate.

The right of an individual not to be subjected to excessive force has long been clearly established. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir. 1989). A police officer's use of force in making an arrest is excessive if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent and motive. *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (*citing Graham v. Connor*, 490 U.S. 386, 397 (1989)). Courts conducting this reasonableness inquiry must evaluate the specific facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The defendants attempt to claim that the four-part test in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), which requires, among others, a showing that force was applied "maliciously and sadistically for very purpose of causing harm," is the

appropriate inquiry in this case because the plaintiff was never formally under arrest. Because the plaintiff was not arrested, the defendants' logic explains, the Fourteenth and not the Fourth Amendment applies and the "objective reasonableness" standard of *Graham* does not apply. Therefore, the defendants urge, because the use of force cannot be shown to be malicious and sadistic, the court should grant the defendants summary judgment.

This argument is without merit because the act of placing the plaintiff in a choke-hold for the mere act of attempting to call an attorney was a 'seizure' within the meaning of the Fourth Amendment, and an unreasonable seizure at that, because the plaintiff was not free to leave the presence of police while she was being choked. The defendants argue that the use of force by Sergeant Marques was not part of a Fourth Amendment seizure and should be judged by the Fourteenth Amendment standard in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). This distinction is important because the four-part test in *Johnson* requires that a jury find that the defendant officer used force with malicious and sadistic intent. *Id.* By contrast, the Fourth Amendment excessive-force analysis in *Graham v. Connor* requires only that the plaintiff establish that the force used was objectively unreasonable under the circumstances, without regard for the subjective intent or motives of the defendant. *Graham*, 480 U.S. at 397. The defendants hope, by expressing Marques's own testimony that he did not intend to harm the plaintiff and that the use of force was in good faith, that the court will find that

the plaintiff cannot prevail on her excessive-force claim as a matter of law.

The subjective intent or motive of Sergeant Marques is irrelevant to the determination of the plaintiff's excessive-force claim because the act of placing Maryann Zadrowski in a choke-hold restrained her liberty of movement and was a seizure within the context of the Fourth Amendment. Because the use of force against the plaintiff was a Fourth Amendment seizure, the objective reasonableness standard of *Graham*, and not the malice and sadism standard of *Johnson*, is the appropriate standard. Because *Graham* is the appropriate standard for excessive force, the plaintiff need not prove that Sergeant Marques intended to cause harm to Maryann Zadrowski when he choked her.

This analysis is not to say that the evidence proffered by the plaintiff is insufficient to demonstrate genuine issues of material fact as to Sgt. Marques's malicious and sadistic intent. As recounted by the plaintiff and other competent witnesses, Sergeant Marques approached the plaintiff from behind, without warning, and placed her in a violent chokehold which made it difficult for the plaintiff to breathe and impossible for the plaintiff to cry out for help. The use of brutal choking without warning against the plaintiff lends itself to an inference that Sergeant Marques intended to cause harm to the plaintiff in bad faith and not to merely prevent her from getting close enough to arresting officers that she might potentially interfere with them, as the defendants maintain.

The defendants' insistence that the use of force was conducted for good faith law-enforcement purposes and not for the purpose of causing harm to the plaintiff is further challenged by the testimony of the plaintiff and others that Sergeant Marques told the plaintiff while choking her that she was "not going to fucking call anyone," in obvious response to the plaintiff's announcement that she was going to call her lawyer over what she believed was a unlawful arrest.

The plaintiff does not bear the burden of proving Marques's mindset, nor is it relevant, because Marques committed a seizure of the plaintiff by choking her. Seizures within the meaning of the Fourth Amendment include not only full-fledged arrest, but also investigatory detentions; see e.g. *Davis v. Mississippi*, 394 U.S. 721 (1969), *Terry v. Ohio*, 392 U.S. 1 (1968); and any other "detention of the [person] against his will." *Cupp v. Murphy*, 412 U.S. 291 (1973). All that is required to establish a seizure is that an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n.16. However, a person has only been seized within the meaning of the Fourth Amendment if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Courts have consistently held that the use of force to restrain a person's movement is a seizure, even where no arrest or investigative detention takes place. See *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (ruling that the application of force to apprehend a suspect

is a 'seizure').

The plaintiff, by her own testimony and the testimony of competent witnesses, has presented facts sufficient to allow a jury to find that Marques placed the plaintiff in a choke-hold, restraining her movement and allowing the jury to infer that the plaintiff reasonably believed that she was not free to leave. Even the defendants' vastly different account of the encounter claims that Marques applied physical force to the plaintiff to stop her from moving. In the light most favorable to the plaintiff, the facts reveal that Sergeant Marques strangled the plaintiff and rendered her unable to move for several seconds. This is sufficient as a matter of law for the determination that Marques seized the plaintiff within the meaning of the Fourth Amendment, and a jury may reasonably find from the evidence that Sergeant Marques applied excessive force to the plaintiff, constituting an unreasonable seizure in violation of the Fourth Amendment.

The defendants make baffling, repeated reference to the plaintiff's use of impolite language and alleged general unpleasantness as part of the justification for the use of force, suggesting that the plaintiff's alleged profanity and the raising of her voice justified Sergeant Marques's assault. But there is no genuine issue of material fact by which the jury could find that the defendants reasonably believed that the use of force was necessary under any of the factors listed in *Graham*: severity of the crime, immediacy of a threat to the safety of officers or others, active resistance to arrest or

evasion of arrest by flight. The defendants have no showed that Zadrowski committed

any crime or that there was probable cause that she had committed a crime of even the

least severity – in fact, Zadrowski was never arrested for a crime by the officers.

    The defendants' account of the events at issue substantially differs from

Zadrowski's, but even under the facts as presented by the defendants, the plaintiff was

not making aggressive gestures or approaching closely to any officer at the scene

during their arrest of Walter Zadrowski or Richard Bright. By the plaintiff's account and

the accounts of witnesses, Walter Zadrowski and Richard Bright had already been

arrested and placed safely in patrol cruisers without any interference by Maryanne

Zadrowski, and she was walking away from the officers on the scene when Marques

choked her. Marques choked her immediately after Maryanne Zadrowski announced

her intention to call a lawyer, an act she was entirely within her rights to do. Unlike the

plaintiffs in *Davis v. Callaway*, 2007 WL 1079988 (D. Conn. 2007), in which the plaintiff

disobeyed a lawful order of a police officer and was in close proximity with a police

officer after the plaintiff had previously assaulted another motorist; and *Tierney v.

Davidson*, 133 F.3d 189, 199 (2d Cir. 1998), in which the plaintiff was struck with a

nightstick while physically interfering with the defendant officer's struggle to restrain her

boyfriend; Maryanne Zadrowski was not in close proximity to any officer or approaching

any officer, had not displayed any propensity toward violence, did not approach any

officer while he was trying to arrest either Walter Zadrowski or Richard Bright; did not

engage or join in any physical struggle with police; and did not resist or ignore any lawful order of the police.

The only words addressed to Maryanne Zadrowski which resembled an order were the words "You're not going to fucking call anyone," uttered by Sergeant Marques as he was choking her, in response to Maryanne Zadrowski's statement that she was going to call her lawyer. A call to a lawyer by a relative at the scene of an arrest, when that relative was not near police officers and was not impeding the officers from arresting her brother or son or executing any of their other duties, was well within the plaintiff's rights under the First Amendment, and even a polite order not to call her lawyer by Sergeant Marques along with a warning prior to the application of force against the plaintiff would not have been a lawful order or rendered the use of force lawful by Marques.

The facts as presented by the defendants are also completely devoid of any suggestion that Maryann Zadrowski was attempting to resist arrest or to evade officers when they used force against her, especially in light of the fact that she was never under arrest or an investigatory stop on the suspicion of any criminal activity. Maryanne Zadrowski's only involvement with the Plainville Police Department was calling them for assistance in getting help for her intoxicated and disturbed son; walking with her son to present him to the police officers at the scene; verbally complaining to officers about their arrest of Walter Zadrowski and Richard Bright; and attempting to call her lawyer for

advice shortly before she was brutally choked.

Perhaps most indicative of the weakness of the defendants' argument that the use of force was objectively reasonable are the "volatile" circumstances that they submit as proof of the apparent necessity of a choke-hold: 1) that Walter Zadrowski had, half an hour before, inside the house, allegedly gestured to an unloaded shotgun in response to Richard Bright's statements that he wanted to kill himself (the defendants do not, and could not truthfully, claim that any of the plaintiff's family members were armed with said shotgun or any other weapon at the time the officers interacted with them - the conversation regarding the shotgun had occurred approximately 30 minutes prior to the officers' arrival); 2) that the Plaintiff allegedly subjected the officers to "significant verbal abuse" (the defendants do not claim that the Plaintiff had threatened the officers with physical violence; at most they complain that the plaintiff uttered some common four-letter words); 3) Richard Bright, who, the plaintiff had warned the officers, was drunk and emotionally disturbed, made vague threats of future harm to the officers present at the scene.

In other words, the most that the defendants can hope to prove is that they arrived at a scene where Walter Zadrowski, who was calm and cooperative with the arresting officers, allegedly had sarcastically offered an unarmed shotgun to a teenager a half-hour before they arrived; where Maryanne Zadrowski used some dirty words after officers had arrested her family members; and where Richard Bright, who was a drunk

- 12 -

and emotionally disturbed teenager, said some things one might expect a drunk and emotionally disturbed teenager to say. They do not show any aggressive actions by Maryanne Zadrowski herself or any seriously heightened danger to themselves to suggest that they believed that Maryanne Zadrowski was going to hurt them. These facts are simply insufficient as a matter of law to support summary judgment on a defense that the officers were objectively reasonable in their belief that choking Maryanne Zadrowski was justified.

At most, there is a genuine issue of material fact as to the actions of Maryanne Zadrowski (i.e., did she approach officers during their arrest of two men screaming profanities, as the defendant officers suggest; or was she walking away from officers after the two men had been arrested and simply announce that she was going to call her lawyer, as the plaintiff and other witnesses maintain?); and the degree of force used by Sergeant Marques (i.e., did he merely extend his arm and stop Maryanne Zadrowski from advancing on nearby officers, as the defendant officers suggest, or did he put his large arm around Maryanne Zadrowski's throat and squeeze until she had difficulty breathing and could barely speak, as the plaintiff and witnesses maintain?). Because genuine issue of material fact exist as to the plaintiff's excessive force claim against the defendant officers, summary judgment should be denied.

### C.    Failure to Intervene

A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers. *Ricciuti v. New York City Trans. Auth.*, 124 F.3d 123, 129 (2d Cir. 1997). A state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if 1) the officer had a realistic opportunity to intervene and prevent the harm; 2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and 3) the officer did not take reasonable steps to intervene. See *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1992); *Ricciuti*, 124 F.3d at 129.

In order for liability for failure to intervene to attach, the officer must have had a realistic opportunity to intervene to prevent the harm from occurring. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Anderson, 17 F.3d at 557.

It is undisputed that all of the named defendant officers were at the scene of the arrest of Walter Zadrowski and Richard Bright and of the strangling of Maryanne Zadrowski by Sergeant Marques. It is also undisputed that Lieutenant Mullins saw Sergeant Marques "restrain" the Plaintiff. See Defendants' Local Rule 56(a)1 Statement ¶ 33. There are, however, genuine issues of material fact regarding the conduct of Maryanne Zadrowski and the actions of Sergeant Marques, and the objective reasonableness of the officers' belief in the necessity of the use of force under the

circumstances, all of which are discussed in depth in Section B, above.

The affidavits of Maryanne Zadrowski, Barbara Zadrowski and Joseph Bright all allege sufficient testimony to raise genuine issues of material fact as to the actions of the plaintiff and Marques surrounding the choking of the plaintiff by Marques alleged in this lawsuit, as described above. Viewing the evidence in the light most favorable to the plaintiff, the jury could find that Sergeant Marques attacked Maryanne Zadrowski from behind without warning as she walked away from the officers at the scene and attempted to call her attorney on her cell phone, and that Sergeant Marques yelled "You're not going to fucking call anyone" while choking the plaintiff violently with his arm around her neck.

Crediting this account of events, the jury could find that Lieutenant Mullins and other officers present are liable to Zadrowski for their failure to intervene to protect her from Marques's use of excessive force and violation of her civil rights. As to the first element of a claim for failure to intervene, the officers had reasonable opportunity to intervene. The plaintiff was choked for several seconds in a violent manner, which Lieutenant Mullins and other officers could see. The plaintiff and Barbara Zadrowski maintain that Mullins and several other officers stood and watched as Marques choked Zadrowski.

As to the second element of the claim, if the jury credits the plaintiff's account of events, a reasonable officer in the position of the defendant officers at 129

Shuttlemeadow Road that night would have known that Maryanne Zadrowski's constitutional rights were being violated. It is clearly established law that the use of force by police is justified only in circumstances where it is necessary to effect an arrest, to ensure compliance with a lawful police order, to protect officers or others from an immediate threat of harm, or to prevent a person from resisting arrest or fleeing from custody. The law does not permit officers to use force, particularly brutal force like choking, against a person who is not under suspicion of a crime, is not under arrest, and is not disobeying lawful orders, but is simply dialing her attorney while standing a safe distance from police officers at the scene. A reasonable officer in the position of the defendant officers, would have known that the use of force against Maryanne Zadrowski for calling her attorney was unconstitutional and completely unjustified, and that the act of Sergeant Marques choking her was unlawful. It was therefore the duty of the defendant officers, especially Lieutenant Mullins, who admits to seeing Marques's actions, to take action to end the violation of the plaintiff's constitutional right against unreasonable seizure and excessive force.

It is undisputed that the police officers present did absolutely nothing to stop Marques from choking the plaintiff without justification. No officer claims that he moved toward Zadrowski in an attempt to stop the choking, or appealed to Sergeant Marques to stop and release the plaintiff, even though the choking took place for several seconds and they had the knowledge and opportunity to do so. A jury could find that the

officers unreasonably failed to put an end to Marques's brutal assault, and for that reason, summary judgment on this count should be denied.

### D.    Qualified Immunity

In order to maintain a defense of qualified immunity, police officers must establish that either (a) no constitutional right was violated; or (b) that the constitutional right violated was not clearly established at the time of the alleged conduct. <u>Pearson v. Callahan</u>, 129 S.Ct. 808 (2009). "Though a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, that doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." <u>Castro v. United States</u>, 34 F.3d 106 (2d Cir. 1994).

It was clearly established at the time of the attack on the plaintiff that a police officer may use physical force only as necessary to effect an arrest, prevent escape, prevent threatened imminent harm to officers or other people, or to ensure compliance with lawful orders. See, e.g., *Graham v. Connor*, 490 U.S. 386 (1989), Conn. Gen. Stats. § 53a-22(b). This was not a de minimis use of force, and was unnecessary for any lawful purpose, according to the evidence viewed in the light most favorable to the plaintiff; according to the plaintiff's account of events, which is contradicted only by the self-serving testimony of the defendant police officers, the plaintiff was walking away from the officers, who had already arrested Walter Zadrowski and Richard Bright and

placed them safely into custody, and only announced that she was going to call her lawyer. Maryanne Zadrowski posed no threat to the officers, did not interfere with their arrests of her brother and son, and was not herself under arrest. No reasonable officer under these circumstances could have believed that the law authorized Sergeant Marques to choke the plaintiff without warning.

Additionally, it was clearly established at the time of the use of force against Maryanne Zadrowski that the nearby officers were under an affirmative duty to intervene to rescue Maryanne Zadrowski from having her constitutional right to be free from excessive force violated by Marques. Just as the right to be free from unjustified force when she was not posing a threat to any officer, interfering with their duties or evading arrest was clearly established, the affirmative duty of an officer to intervene when witnessing unconstitutional use of force was also clearly established. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1992); Ricciuti v. New York City Trans. Auth., 124 F.3d 123, 129 (2d Cir. 1997). For these reasons, the defendant officers are not entitled to qualified immunity.


   **E.    Recklessness**

Reckless conduct is conduct which indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. Craig v. Driscoll, 262 Conn. 312, 342 (2003). Such conduct is more than negligence or gross negligence, and

is such "as indicates a reckless disregard of the just rights or safety of others." *Elliott v. City of Waterbury*, 245 Conn. 385, 414 (1998). The state of mind amounting to recklessness may be inferred from conduct. *Craig*, 262 Conn. at 342.

As explained extensively in Section B, *supra*, there is a clear dispute as to the events at issue in this case and the actions of Maryanne Zadrowski and Sergeant Marques, respectively. In the light most favorable to the plaintiff, Sergeant Marques choked the plaintiff without warning as she was walking away from the defendant officers and announcing that she was going to call her attorney on her cell phone; it is undisputed that the plaintiff did not assault anyone, was not under arrest, and did not interfere with the defendant officers in their duties. The defendants offer only their own self-serving testimony and police reports they prepared to contest the plaintiff's story. If the jury believes the plaintiff, they could reasonably find that Marques choked the plaintiff with reckless disregard of her constitutional rights or her own safety, especially in light of testimony that he exclaimed, "You're not going to fucking call anyone" as he choked her. Summary judgment as to the plaintiff's claim of recklessness must therefore be denied.

## F.     Assault and Battery

The right of an individual not to be subjected to excessive force has long been clearly established. *Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir. 1989). A police

officer's use of force in making an arrest is excessive if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent and motive. *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (*citing Graham v. Connor*, 490 U.S. 386, 397 (1989)).

This count is substantially similar to the plaintiff's count for violation of her civil rights by excessive force, as is the defendant's argument in favor of summary judgment. The defendants argue that the force used was *de minimis* and objectively reasonable under the circumstances. The plaintiff, as further explained in Section B, *supra*, disputes the defendants' account with competent evidence that Sergeant Marques choked the plaintiff without warning, as she walked away from the defendant officers, in a malicious, sadistic, and unnecessary response to her announcement that she was going to call her attorney. In the light most favorable to the plaintiff, the evidence shows that the plaintiff was not under arrest, did not interfere with the officers and did not assault or threaten to assault any person. Genuine issues of material fact regarding the plaintiff's claim for assault and battery therefore exist; the defendants' argument is wholly without merit and their motion for summary judgment on the count of assault and battery should therefore be denied.

### G.    False Imprisonment

In Connecticut, false imprisonment, or false arrest, is the unlawful restraint by

one person of the physical liberty of another. Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir. 2007); Outlaw v. City of Meriden, 43 Conn. App. 387, 392 (1996), *cert. denied*, 128 S. Ct. 109 (2007). Probable cause renders the restraint lawful and is a complete defense to claims of false arrest against police officers. Johnson v. Ford, 496 F.Supp.2d 209, 213 (D. Conn 2007); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

As further explained in Section B, *supra*, the defendants' claim and self-serving evidence in support that Sergeant Marques lawfully restrained the plaintiff by merely extending his arm and preventing her from moving forward toward the defendant officers is directly denied and contradicted by competent evidence of the plaintiff that Marques placed the plaintiff in a violent choke-hold, not only causing her serious injury, but restraining her physical liberty. By the plaintiff's account and those of competent witnesses, the plaintiff was not advancing toward any officer and was not engaged in any behavior which made it necessary or even arguably or apparently necessary to use force against her or to restrain her. Because there are genuine issues of material fact which, if resolved in the plaintiff's favor, will support a verdict in her favor for false imprisonment, the defendants' motion for summary judgment as to the claim of false imprisonment must be denied.

### H.    Negligent Infliction of Emotional Distress

A plaintiff must establish four elements of a prima facie case for negligent

infliction of emotional distress in Connecticut: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) that the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003); Montinieri v. Southern New England Tel. Co., 175 Conn. 337, 345 (1978).

The defendants' argument, like their argument throughout their memorandum of law in support of summary judgment, is predicated on the notion that the undisputed facts show that the actions of the defendant officers were lawful and justified and that Sergeant Marques used only *de minimis* force. For the reasons stated in Section B and C, *supra*, such argument is wholly without merit, because the evidence put forth by the plaintiff shows that the nature and legality of the defendants' actions are the subject of a good faith dispute. Because genuine issues of material fact exist, and the plaintiff may prevail if a jury credits the case put forth by the plaintiff, summary judgment on the negligent infliction of emotional distress claim must be denied.

## I.    Intentional Infliction of Emotional Distress

In order to prevail on a claim for intentional infliction of emotional distress, the plaintiff must show 1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; 2)

that the conduct was extreme and outrageous; 3) that the defendant's conduct was the cause of the plaintiff's distress; and 4) that the emotional stress sustained by the plaintiff was severe. Petyan v. Ellis, 200 Conn. 243, 253 (1986); Carrol v. Allstate Ins. Co., 262 Conn. 433, 442-43 (2003).

Extreme and outrageous conduct is "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Petyan v. Ellis, 200 Conn. 243, 254 n.5 (1986). Extreme and outrageous conduct does not include conduct that is "merely rude, tactless or insulting," Garris v. Dep't of Corrections, 170 F.Supp.2d 182, 189 (D.Conn. 2001), and mere insults, indignities or annoyances will not suffice. Brown v. Ellis, 40 Conn. Supp. 165, 167 (Conn. Super. 1984).

The defendants' argument, like their argument throughout their memorandum of law in support of summary judgment, is predicated on the notion that the undisputed facts show that the actions of the defendant officers were lawful and justified and that Sergeant Marques used only *de minimis* force. For the reasons stated in Section B and C, *supra*, such argument is wholly without merit, because the evidence put forth by the plaintiff shows that the nature and legality of the defendants' actions are the subject of a good faith dispute. Because genuine issues of material fact exist, and the plaintiff may prevail if a jury credits the case put forth by the plaintiff, summary judgment on the intentional infliction of emotional distress claim must be denied.

### K.     C.G.S. § 52-577n

Defendants argue that they are entitled to governmental immunity because the exercise of their duties as police officers constitutes a discretionary act for which state law affords them governmental immunity. Conn. Gen. Stats. § 52-577n(a)(2)(B). However, governmental immunity does not protect municipal employees (nor the municipalities which employ them) when such employees fail to act when circumstances make it apparent to the officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. *Violano v. Fernandez*, 280 Conn. 310, 329 (2006). To show that the imminent harm/identifiable person exception to immunity applies, the plaintiff must show 1) an imminent harm; 2) an identifiable victim; and 3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. *Id*.

The plaintiff, at the time of the events at subject in this action, was in danger of imminent harm. "Imminent" means "about to occur or impending" and "ready to take place, near at hand." *Purzycki v. Fairfield*, 244 Conn. 101, 116 (1998). An "identifiable person" must be 1) an identified or readily identifiable person, or a member of a "narrowly defined identified class of foreseeable victims," and 2) be subject to "imminent harm." *Id*. at 108. There is no genuine question that the plaintiff was an identifiable person at risk of imminent harm. The plaintiff was not some vague person unknown to the officers identified in this lawsuit; the defendant officers were present and aware of

- 24 -

her presence when defendant Marques unjustifiably and excessively choked the plaintiff and one or more officers stood silent and watched Marques attack the plaintiff. At the time immediately prior to Marques's use of excessive force, it was clear or should have been clear that to subject the plaintiff to serious harm by choking her without legal justification would result in imminent and serious physical harm to the plaintiff and the violation of her civil rights. Several officers, including Lieutenant Mullins, were nearby when Marques moved in to choke the plaintiff without justification, and could have stopped him from violating the plaintiff's civil rights, but did nothing to stop him.

The harm was also apparent to the officers. As discussed above, the law is clear that officers may not use force where the person against whom force is to be used is not under arrest or suspected of a crime, is not resisting or attempting to evade arrest, is not posing a threat of immediate harm to officers or other persons, and is not interfering with a police officer's lawful duties. A police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers. *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1992). Several officers were watching Marques choke the plaintiff in response to her announcement that she was going to contact an attorney, and had a realistic opportunity to prevent the use of excessive force. But the officers did nothing to stop the use of excessive force that occurred right before their eyes. As

a result, the defendant officers are not entitled to governmental, municipal, or any other form of immunity for negligence and their motion for summary judgment on this issue must be denied.

Similarly, for reasons stated above in this memorandum, summary judgment is inappropriate as to the various claims against the individual defendant officers. Because the officers are not entitled to summary judgment, the Town of Plainville is not entitled to summary judgment on the plaintiff's claim for indemnification under Conn. Gen. Stats. § 7-465.

### L.    *Monell*

The defendant town's motion for summary judgment on the plaintiffs *Monell* claim should be denied, because the Town of Plainville has in place a policy, procedure, custom or usage of failing to train its officers in the necessity to be on the lookout and intervene when they witness the use of excessive and unwarranted force by a fellow police officer. A failure-to-train theory of municipal liability for 42 U.S.C. § 1983 "requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), *quoting City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

Although the defendants produced information tending to show that the defendant officers received at least some training on the circumstances under which force is justified or become excessive, or on "the use of force continuum," they did not produce, nor could they identify any training program, class or policy which would inform or train the defendant officers on the affirmative duty that such officers have to intervene to stop the deprivation of civil rights by a fellow officer.

The defendants, in their memorandum, misapprehend the nature of a 1983 claim for failure to train. It is not necessary that the plaintiff show that it was the "standard practice" of the Plainville Police Department to use undue force or that the Town of Plainville "encouraged or tacitly condoned the use of excessive force by its officers." A municipality may be held liable for failure to train simply by a showing that the town was deliberately indifferent to the likelihood that a particular constitutional violations may occur. *City of Canton*, 489 U.S. at 388.

Here, the Town of Plainville knew or should have known that it was necessary to train its officers in their affirmative duty to intervene to protect citizens from the violation of their civil rights by other officers. The Town and its final policymaker, Chief Coppinger, had a choice to train the defendant officers on the duty to intervene, but chose not to in the face of the obvious need for such training. Because they failed to train their officers in this duty to intervene, the defendant officers, who watched Marques choke the plaintiff and knew that there was no justification for the use of such

force against the plaintiff, stood by and did nothing to stop him. If the officers had intervened, the plaintiff likely would not have suffered the serious injury she has.

The Town of Plainville and Chief Coppinger were therefore deliberately indifferent to the rights of citizens in their deliberate failure to train Plainville Police Officers on the duty to intervene, and this deliberate indifference was the moving force behind the violation of the plaintiff's right to be free from the use of excessive force. The defendants' motion for summary judgment on the plaintiff's *Monell* count should therefore be denied.


**CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that this Court deny the defendants' motion for summary judgment in its entirety.

**PLAINTIFF,**


**BY /s/ A. Paul Spinella**
**A. Paul Spinella, Esq.**
**Spinella & Associates**
**One Lewis Street**
**Hartford, CT 06103**
**Telephone:  (860) 728-4900**
**Fax:  (860) 728-4909**
**Federal Bar #: ct00078**
**E-mail: spinella_law@yahoo.com**


- 28 -

**CERTIFICATION**

I HEREBY CERTIFY that on September 28, 2011, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ A. Paul Spinella
A. Paul Spinella, Esq.,
Federal Bar #: ct00078