UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARYANNE ZADROWSKI,                     :
                      Plaintiff,        :
                                        :
v.                                      :          No. 3:09-cv-1367 (DJS)
                                        :
TOWN OF PLAINVILLE, CHIEF DANIEL        :
COPPINGER, LIEUTENANT BRIAN             :
MULLINS, SERGEANT RICHARD               :
MARQUES, OFFICER BRIAN CYBULSKI,        :
OFFICER GREG ARVAI, OFFICER SHANE       :
PHILLIPS, and OFFICER MICHAEL           :
BISNOV,                                 :
                      Defendants.       :

## MEMORANDUM OF DECISION AND ORDER

Plaintiff Maryanne Zadrowski ("Plaintiff") brings this action against the Town of

Plainville ("the Town"), Police Chief Daniel Coppinger ("the Chief"), Sergeant Richard Marques

("Marques"), Lieutenant Brian Mullins ("Mullins"), Officer Brian Cybulski ("Cybulski"), Officer

Greg Arvai ("Arvai"), Officer Shane Phillips ("Phillips"), and Officer Michael Bisnov

("Bisnov") (collectively "the Defendants").

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the Defendants violated her rights

under the Fourth and Fourteenth Amendments to the United States Constitution, and Article

First, Sections Seven, Eight, and Nine of the Connecticut Constitution, by using excessive force

against her, depriving her of her liberty without probable cause, and by failing to intervene and

prevent the purported Constitutional violations. Plaintiff further alleges that the Town is liable

for the actions of the other Defendants because the Plainville Police Department failed to train

and supervise its officers in the use of reasonable and justified force and in the officers' duty to

intervene to protect an individual's civil rights. Plaintiff also alleges the following state common law claims against the police officer Defendants: negligence, recklessness, assault and battery, false imprisonment, negligent infliction of emotional distress, and intentional infliction of emotional distress. Plaintiff further alleges that the Town is liable for the damages caused by its employees based on the provisions of Connecticut General Statutes §§ 52-557n and 7-465.

The Defendants have filed a motion for summary judgment pursuant to Fed. R. Civ. Pro. 56. For the reasons that follow, Defendants' motion for summary judgment (doc. #53) is **GRANTED IN PART** and **DENIED IN PART**.

## I.  FACTS[1]

At the time of the events in question, i.e., October 27, 2008, Richard Bright ("Bright"), Plaintiff's son, had been staying at the home of Walter Zadrowski ("Zadrowski"), who was his uncle and the Plaintiff's brother, for approximately one week in order "to help my uncle with some things around the farm, and to . . . try to better myself, stay away from drugs and alcohol." (Doc. # 53-4, at 4, p. 7:7-9). Bright's father had  passed away in 2002.

At approximately 9:00 PM on October 27, 2008, Bright arrived at Zadrowski's home under the influence of both alcohol and marijuana. Bright went with Zadrowski into the garage and started to argue with him. Zadrowski confronted Bright about his behavior, at which point Bright became agitated, stating he was depressed and unhappy with his life. After Bright mentioned a desire to kill himself, Zadrowski took a .22 rifle off a bench, held it in front of

---

[1]The parties disagree as to certain facts. For purposes of determining the Defendants' motion for summary judgment, the Court "accept[s] as true facts that [are] undisputed by the parties, and resolve[s] disputed facts in favor of the non-moving party where there [is] evidence to support [her] allegations." *Sousa v. Roque*, 578 F.3d 164, 166 n.1 (2d Cir. 2009).

Bright and said, "Here, is that what you want?" (Doc. #53-9, at 2). Bright responded to his uncle's question by saying "No." (Dkt. #53-5, at 8, p. 22:13). Zadrowski then called the Plaintiff to have her come pick Bright up.

After Zadrowski called the Plaintiff, she called her son, Bright, who told her that he was going to Hartford to get a gun to kill himself. At approximately 10:30 PM Plaintiff arrived at Zadrowksi's home; at approximately 11:30 PM  Plaintiff called the police, stating that her son was suicidal and requesting that he be taken to a hospital. Shortly thereafter, Officers Arvai, Phillips, and Bisnov arrived on the scene.

The officers spoke to Bright, who informed them of his confrontation and argument with Zadrowski.  Bright also indicated that Zadrowski had produced a gun in response to Bright's stated desire to kill himself. After hearing this, the officers went and spoke with Zadrowski. After Zadrowski confirmed Bright's statements, the officers took Zadrowski into custody and placed him in a police cruiser.

When Zadrowski was arrested, Bright became irate, "flipping out on" the officers. (Doc. #53-4, at 7, p. 19:6). At approximately 12:30 AM, on October 28, 2008, Plaintiff again contacted the Plainville  Police Department and requested a supervisor because of her displeasure with how the situation was being handled. Shortly thereafter, Lieutenant Mullins, Sergeant Marques, and Officer Cybulski arrived at the scene. Plaintiff walked to the middle of the driveway with Bright and questioned Mullins and Marques as to why Zadrowski had been arrested. Bright began cursing at the officers and made personal threats against them. At that point the officers arrested Bright, placed him in handcuffs, and walked him down to a police cruiser at the end of the driveway.

After Bright was placed under arrest, Plaintiff started walking back up the driveway, away from the police cruiser at the end of the driveway where Bright had been brought, announced that she was going to call her attorney, and attempted to call her attorney on her cell phone. According to the Plaintiff, as she was trying to call her attorney, Sergeant Marques ran up behind her, slammed her against her car, choked her to the point where she couldn't breathe, and told her that she was not to call anyone. In her Local Rule 56 (a)(2) Statement in opposition to the Defendants' motion for summary judgment, the Plaintiff contends "[a]t least two officers were looking in the direction of Sergeant Marques and Maryanne Zadrowski as Marques choked her, but did and said nothing in an attempt to stop Marques." (Doc. # 64-1, at 10, ¶ 24).

## II. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining a summary judgment motion, the Court should not weigh the evidence, "but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Although the nonmoving party may not rest on mere conclusory allegations or denials to defeat a motion for summary judgment, "[s]ummary judgment is inappropriate when the

admissible materials produced in opposition to the summary judgment motion make it arguable that the claim has merit." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009) (internal quotation marks omitted). When considering a summary judgment motion, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). Ultimately, summary judgment is inappropriate when an opponent demonstrates uncertainty as to the true state of the factual record. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).

**B.     Federal Claims**

1. **Excessive Force**

Plaintiff alleges that Defendant Marques used excessive force when he prevented her from calling her attorney. Specifically, Plaintiff contends that after she had walked away from the area where Bright was being placed under arrest and announced that she was going to call her attorney, Marques "came behind me, without any warning, and put his right arm around my neck, choking me violently, twisting my arm behind my back . . . ." (Doc. # 64-6, at 3, ¶ 12). Defendants counter that Marques merely "place[d] his arm across [Plaintiff's] shoulder and it looked as if he was preventing her from getting any closer [to the area where Bright was being placed under arrest]." (Dkt. #53-11, at 3-4, ¶ 23).

 "[*A*]*ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has

in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Indeed, whenever an officer restrains an individual's freedom to walk away, he has "seized" that individual. *See id.* at 17; *see also Cupp v. Murphy*, 412 U.S. 291, 294 (1973) (detention of a person, against his will, constituted seizure of his person and implicated Fourth Amendment protections). It does not matter what the encounter is called, it is the physical force or show of authority that creates a seizure. *See Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed 'arrests' or 'investigatory detentions.'").

Because the Court is required to view the evidence in the light most favorable to the nonmoving party, and given the clear disparity between versions of events, the Court adopts the Plaintiff's version of events regarding the nature and quality of force used by Marques for the purposes of deciding this motion. *See Amnesty Am.*, 361 F.3d at 122. Although the Court has noted that not all interactions between police and citizens constitute a seizure, the Plaintiff's contention that Defendant Marques "chok[ed] me violently, twisting my arm behind my back" does establish such a seizure. This encounter is just the type of "physical force . . . [that] has in some way restrained the liberty of a citizen . . . ." *Terry v. Ohio*, 392 U.S. at 19 n.16.

The reasonableness standard under Fourth Amendment is an objective one which, although "not capable of precise definition or mechanical application, . . . requires careful attention to the facts and circumstances of each particular case . . . ." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the

20/20 vision of hindsight" because there must be "allowance for the fact that police officers are often forced to make split-second judgments - - in circumstances that are tense, uncertain, and rapidly evolving - - about the amount of force that is necessary in a particular situation." *Id.* at 396-97. However, this inquiry is one of "objective reasonableness" and does not encompass subjective concepts like "malice" and "sadism." *See id.* at 399.

The Court has noted that there are significant unresolved issues of fact regarding the use of force in this case. In similarly disputed scenarios courts have declined to grant summary judgment. *See Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004) (vacating summary judgment for excessive force claim, even though the defendant had identified variations between the plaintiff's deposition testimony and statements in her affidavit regarding force used against her by a police officer, because a jury, not the court, should assess the plaintiff's account along with any conflicting evidence); *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987) ("Resolution of credibility conflicts and the choice between . . . conflicting versions [of how much force was used] are matters for the jury and were properly not decided by the district court on summary judgment.").

Here, the Plaintiff has presented consistent representations that Marques choked her while she was attempting to call her attorney and after she had walked away from the area where the police officers were placing Bright under arrest. The Defendants have been similarly consistent in their firm disagreement as to what transpired between Marques and the Plaintiff and exactly where the incident occurred. Therefore, this Court finds genuine issues of material fact regarding the level of force used by Defendant Marques that should be assessed by the jury, not the Court. Accordingly, the Defendants' motion for summary judgment with regard to Plaintiff's excessive

force claim against Defendant Marques is **DENIED**. However, because there is no dispute that Marques was the only individual to touch the Plaintiff, the motion for summary judgment on Plaintiff's claim for excessive force is **GRANTED** as to all other Defendants.[2]

2.        **Failure to Intervene**

The Plaintiff alleges that "the Defendant Officers acted jointly and in concert with each other as they each had the duty and opportunity to protect the Plaintiff from the unlawful acts of the others." (Doc. #1, at 6, ¶ 20). Specifically, she claims the Defendant Officers are liable because they "unreasonably failed to put an end to Marques's brutal assault . . . ." (Doc. # 64, at 17).

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where the officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Id.*(citations omitted).

For liability to attach, however, the officer must have a realistic opportunity to intervene to prevent the harm from occurring. *See id.* In *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988),

[2]The Plaintiff's complaint is not entirely clear as to which of the other Defendants are included in her excessive force claim. Compare Doc. # 1, at 5, ¶ 20 with Doc. # 1, at 6, ¶ 21. In any case, the motion for summary judgment is granted as to all other Defendants that are included in the excessive force claim.

the plaintiff alleged that he was struck three times in rapid succession on his face and head by

two police officers, and that a third officer who observed these actions failed to intervene to stop

them. In finding that the third officer could not be held liable for the blows to the face and head,

the Second Circuit concluded that "[t]his was not an episode of sufficient duration to support a

conclusion that an officer who stood by without trying to assist the victim became a tacit

collaborator" *Id.* at 11-12; *see also Parks v. Segar*, Civ. No. 3:09CV1162 (HBF), 2012 WL

4051833, at *4 (D. Conn. Sept. 13, 2012) (holding defendant not liable for failing to intercede

and prevent a dog bite, although only two feet away, because of the dog's sudden movement and

the short duration of the bite); *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 182-83 (D. Conn.

2003) (citing the *Anderson* test and referencing the *O'Neill* inquiry of duration, the court held

that defendant police officers who were on the other side of a vehicle when the plaintiff was

allegedly kicked by another officer  were not liable for failure to intervene because the three to

five kicks would have occurred with such rapid succession that the officers had no realistic

opportunity to prevent them). "Whether an officer had sufficient time to intercede or was capable

of preventing the harm being caused by another officer is an issue of fact for the jury unless,

considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*,

17 F.3d at 557.

        There is a dispute about which of the other Defendants witnessed the contact between the

plaintiff and Defendant Marques. Defendants contend that all the Defendant Officers, aside from

Marques and Lieutenant Mullins, were "engaged in either monitoring Walter Zadrowski or

monitoring and arresting Richard Bright" and, therefore, could not have observed or had reason

to know that excessive force was being used. (Dkt #53-2, at 8, ¶ 32). Plaintiff, on the other hand,

alleges that "at least two officers were looking in the direction of Sergeant Marques and Maryanne Zadrowski as Marques choked her, but did and said nothing in an attempt to stop Marques." (Dkt. #64-1, at 10, ¶ 24). Unfortunately, the plaintiff fails to establish *who* those two officers are; she never provides any evidence that would indicate their identities.

Regardless of who was watching, the Court finds that "considering all the evidence, a reasonable jury could not possibly conclude" that any of the other officers had a realistic opportunity to intervene and prevent any of the alleged harm by Defendant Marques. *Anderson*, 17 F.3d at 557. The Defendants concede that Mullins observed Marques intercept the advancing plaintiff and restrain her, but did so "very briefly." (Doc. #53-10, at 24, p. 91:22-25). Whether Mullins' testimony is meant to indicate that he saw Marques for only a short duration or that the contact was of short duration is unclear. The Plaintiff herself, however, represents that "[s]everal seconds after Sergeant Marques began to strangle [her] for calling her attorney, he released her." (Dkt. #64-1, at 9-10, ¶ 20). Similarly, Barbara Zadrowski's affidavit represents that she witnessed Marques choke the plaintiff, but only for "[s]everal seconds." (Dkt. # 64-4, at 4, ¶ ¶ 17-20). Therefore, even if all the other defendant officers witnessed Marques apply excessive force to the plaintiff, the altercation was not long enough to warrant liability. The several second duration of the contact between the plaintiff and Marques was not "an episode of sufficient duration to support a conclusion that [the officers] who stood by without trying to assist the victim became [] tacit collaborator[s]." *O'Neill*, 839 F.2d at 11-12; *see also Parks*, 2012 WL 4051833, at *4 (officer who observed quick dog bite was not liable for failing to intervene even though he was just two feet away). Additionally, the defendant officers were all too far away to realistically intervene. Just as the officers in *Jones* were too far removed to prevent three to five kicks in rapid

succession when they were only on the other side of a vehicle, these defendant officers were too far away to prevent a choking incident that lasted for several seconds.[3] "The plaintiff's evidence fails to present sufficient facts to support the inference that [the other Defendants] could have intervened to prevent [Marques] from . . . [choking the plaintiff] . . . ." *Jones*, 285 F. Supp. 2d at 182.

Accordingly, the Defendants' motion for summary judgment as to the Plaintiff's failure to intervene claim is **GRANTED** because (a) the Plaintiff failed to establish the identity of the alleged witnesses and (b) the Plaintiff failed to present sufficient facts to support the inference that any such witness had a realistic opportunity to intervene and prevent the alleged harm.

3. **Qualified Immunity**

The Defendant Officers argue that they are entitled to the protection of qualified immunity as to all of Plaintiff's claims. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly- established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome this protection, a plaintiff must first allege the violation of a clearly established constitutional or statutory right, and second, that a reasonable official

_____

[3]The defendants maintain that the other officers were near the road, while the plaintiff maintains that two of the other officers were on the other side of her car from where she and Marques were. Accepting the Plaintiff's version of these facts, the Court finds this situation to be comparable to that in *Jones*, where the court concluded that "no reasonable jury could infer that [two police officers], who were on the other side of the vehicle, could have intervened in sufficient time to stop the 'three to five kicks'" of the plaintiff by a third police officer. 285 F. Supp. 2d at 182-83.

should have known that the challenged conduct violated that established right. *See id.* at 142-43. Reasonableness is determined on the basis of the facts and circumstances of the particular case. "The objective reasonableness test is met - - and the defendant is entitled to immunity - - if officers of reasonable competence could disagree on the legality of the defendant's actions." *Id.* at 143 (internal quotation marks omitted).

   Since the Court has already found that Lieutenant Mullins and Defendant Officers Cybulski, Arvai, Phillips, and Bisnov are entitled to summary judgment as to the Plaintiff's claims against them for excessive force and failure to intervene, those claims are not included in this analysis. Conversely, the Court has concluded that the remaining federal claim against Defendant Marques for excessive force will be determined based on the objective reasonableness standard outlined above in Section II.B.1. Additionally, the Court has concluded that there is a significant factual dispute regarding the reasonableness of such force, and that the factual findings necessary to resolve that issue are within the province of a jury, not the Court. Thus, the Defendants' motion for summary judgment on qualified immunity grounds is **DENIED**.

   4. **Municipal Liability (*Monell* Claim)**

   Plaintiff also argues that the Defendant Town of Plainville and Defendant Police Chief Coppinger are liable and responsible for the acts of the Defendant Officers because the Town created de facto policies, practices, and customs through Chief Coppinger by virtue of his failure to train and supervise the Defendant Officers resulting in the alleged excessive force and failure to intervene.

   Municipalities can be held liable under § 1983 "when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." *Reynolds v.*

*Guiliani*, 506 F.3d 183, 190 (2d Cir. 2007) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978)). "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). Such an "official policy" may be inferred from the informal acts or omissions of supervisory municipal officials. *See Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987).

To support such an inference, the municipality's failure to supervise or properly train must be so severe as to constitute "gross negligence" or "deliberate indifference" to the plaintiff's rights. *Id*. at 401; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983."). "The Second Circuit has identified three requirements that a plaintiff must demonstrate before a municipality's failure to train or adequately supervise its employees can constitute 'deliberate indifference' to its citizens' constitutional rights. The plaintiff must show: (1) that a policymaker knows to a moral certainty that h[is] employees will confront a given situation, excluding rare or unforeseen events; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is history of employees mishandling the situation; and (3) that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights because training and supervision resources should be concentrated on those situations where employee misconduct is likely to deprive citizens of constitutional rights. *Seri v.*

-13-

*Town of Newtown*, 573 F. Supp. 2d 661, 667 (D. Conn. 2008) (internal quotation marks and citation omitted).

Although persistent municipal inaction may give rise to an inference of an unlawful municipal policy within the meaning of *Monell*, *see Sarus*, 831 F.2d at 401, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Specifically, a finding of inadequate training and causation must be "based on more than the mere fact that the misconduct occurred in the first place." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 (2d Cir. 2004) (citing *Harris*, 489 U.S. at 390-92); *see also Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 408-09 (1997) (noting that a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate "deliberate indifference" for the purposes of a failure to train claim).

Moreover, a municipality cannot be liable if the need for such training was not obvious. *See Russo v. City of Hartford*, 341 F. Supp. 2d 85, 109 (D. Conn. 2004) (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann*, 72 F.3d at 1049. However, "a pattern of misconduct, while perhaps suggestive of inadequate training, is not enough to create a triable issue of fact on a failure-to-train theory. The plaintiff must offer evidence to support the conclusion that the training program was inadequate . . . ." *Okin v. Village of Cornwall-on-*

-14-

*Hudson Police Dept.*, 577 F.3d 415, 440-41 (2d Cir. 2009) (internal quotation marks and citation omitted).

      Although the Plaintiff's complaint alleges a failure to train the officers in the use of force, she has presented no evidence to support that claim. Instead she has acknowledged that "the defendants produced information tending to show that the defendant officers received at least some training on the circumstances under which force is justified or become[s] excessive . . . ." (Doc. # 64, at 27). Nevertheless, the Plaintiff also alleges that the Defendants "did not produce, nor could they identify any training program, class or policy which would inform or train the defendant officers on the affirmative duty that such officers have to intervene to stop the deprivation of civil rights by a fellow officer." (*Id.*). It is the Plaintiff, however, who has failed to provide any evidence upon which liability can be based. Although a plaintiff need not identify a written policy for *Monell* liability to attach, there must be an act or omission of the municipal supervisor from which an "official policy" may be inferred. *See Sarus*, 831 F.2d at 400. The Plaintiff's failure to train claim rests on her argument that "the Town of Plainville knew or should have known that it was necessary to train its officers in their affirmative duty to intervene to protect citizens from the violation of their civil rights by other officers." (Doc. #64, at 27). This statement is a conclusory allegation, not evidence, and is, by itself, insufficient to survive a motion for summary judgment.

      Furthermore, the Plaintiff has failed to demonstrate either an obvious need or deliberate indifference with regard to her failure-to-train claim. The Plaintiff has provided no evidence of repeated complaints of civil rights violations committed by Plainville  police officers. In fact, there is no evidence of a single complaint for *any* violation before the current allegation, much

less evidence that the Town made no meaningful attempt to investigate or to forestall further incidents.

In addition to not demonstrating the establishment of an "official policy," the Plaintiff has failed to prove causation with regard to her failure to intervene claim. A municipality is liable under §1983 for acts of its employees "when, and only when, their official policies cause their employees to violate another person's constitutional rights." *Roe*, 542 F.3d at 36. The Court has already concluded that the Defendants are entitled to summary judgment with regard to the Plaintiff's failure to intervene claims. Consequently, the Defendant Town could not be liable on the basis of a claim that the Town's failure to train on the duty to intervene caused the Defendant Officers to violate the Plaintiff's constitutional rights. For all these reasons the Defendants' motion for summary judgment with regard to a *Monell* theory of municipal liability is **GRANTED**.

## C.    State Claims

### 5.   Abandoned Claims

"Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Coltin v. Corp. for Justice Management, Inc.*, 542 F. Supp. 2d 197, 206 (D. Conn. 2008) (internal quotation marks omitted). Although Plaintiff alleges numerous state law violations in her complaint, she fails to respond to all of them in her Motion in Opposition of Summary Judgment. In the Second Count of her complaint, the Plaintiff alleges that the Defendant Officers were negligent in their conduct. The Defendants have moved for summary judgment as to the negligence claims, but the Plaintiff's opposition to that motion does not

address the defendants' arguments concerning those claims. Therefore, the Court deems these claims abandoned. *See Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 305 (D. Conn. 2009) ("grounds alleged in the complaint, but not relied upon in summary judgment are deemed to be abandoned"). Accordingly, the defendants' motion for summary judgment with respect to the Plaintiffs' claims for negligence is **GRANTED.**

6. **Recklessness**

Plaintiff asserts a state common law claim of recklessness against the Defendant Officers. "One is guilty of reckless misconduct when 'knowing or having reason to know of facts which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' Restatement [(Second) of] Torts[] § 500." *Craig v. Driscoll*, 64 Conn. App. 699, 721 (2001) (internal quotation marks omitted), *aff'd*, 262 Conn. 312 (2003). Such recklessness is "a state of consciousness with reference to the consequences of one's acts [and is] more than negligence, more than gross negligence . The state of mind amounting to recklessness may be inferred from conduct." *Id.* at 720 (internal quotation marks and citations omitted). Specifically, "reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care . . .  [and] must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention." *Id*. at 720-21 (internal quotation marks omitted).

Initially, the Court notes that recklessness requires a "risk of bodily harm to [another.]" *Id*. at 721. The Plaintiff acknowledges that Marques is the only Defendant to have made contact

with her. Because the Court has determined that the other Defendant Officers had no realistic opportunity to intervene, there is no evidence to suggest that they acted in a manner that risked bodily harm to the plaintiff. Therefore, the Defendants' motion for summary judgment with regards to Defendants Cybulski, Arvai, Phillips, Bisnov, and Mullins for recklessness is **GRANTED**.

Defendant Marques argues that there is no evidence to support a finding that he had a reckless state of mind. However, the law provides that the required state of mind may be inferred from the actor's conduct. *Craig*, 64 Conn. App. at 720. Marques also claims that his use of force was both *de minimus* and necessary.  However, as discussed above, there is significant disagreement as to what exactly happened. There is a genuine dispute as to the nature of Marques' conduct, which is a material fact as to the Plaintiff's claim of recklessness. The determination of whether Marques' conduct was reckless is a question for the jury. *See Craig*, 64 Conn. App. at 720 (the question of whether the defendant's conduct constituted recklessness was a question of fact for the jury). Accordingly, Defendant Marques' motion for summary judgment as to the claim of recklessness is **DENIED.**

7. **Assault & Battery**

 All the Defendant Officers seek summary judgment as to the Plaintiff's claim for assault and battery. However, "[t]o establish a claim for assault and battery, plaintiff must [only] prove that defendants applied force or violence to her and that the application of force or violence was unlawful." *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999) (citing *Moriarty v. Lippe*, 162 Conn. 371, 389 (1972)).

The Court has already concluded that there are unresolved issues of fact as to whether the amount of force used by Defendant Marques was objectively reasonable and therefore lawful. The Court has also concluded that there is no evidence that any other Defendant Officer applied force to the plaintiff. In fact, Plaintiff concedes that no one but Marques touched her. Consequently, the Defendants' motion for summary judgment as to the claim of assault and battery with respect to Defendant Marques is **DENIED**, but is **GRANTED** with respect to the claims against Defendants Cybulski, Arvai, Phillips, Bisnov, and Mullins.

8. **False Imprisonment**

Defendants also seek summary judgment as to the plaintiff's claim of false imprisonment. "False imprisonment . . . is the unlawful restraint by one person of the physical liberty of another." *Odom v. Matteo*, 772 F. Supp. 2d 377, 396 (D. Conn. 2011) (internal quotation marks omitted). "To prevail on a claim of false imprisonment, the plaintiff must prove that [her] physical liberty has been restrained by the defendant and that the restraint was against [her] will, that is, that [she] did not consent to the restraint or acquiesce in it willingly." *Id.* (internal quotation marks omitted). Notably, any period of restraint, however brief, is sufficient to constitute a basis for liability. *See Berry v. Loiseau*, 223 Conn. 786, 820 (1992). A person will not be liable for false imprisonment, however, "unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Rivera v. Double A Transportation, Inc.*, 248 Conn. 21, 31 (1999) (internal quotation marks omitted). Also, a false imprisonment claim cannot survive if the defendant can establish the existence of probable cause for the confinement. *See Johnson v. Ford*, 496 F. Supp. 2d 209,

213 (D. Conn. 2007) ("It is well-established that probable cause is a complete defense to claims of false imprisonment[.]").

In response to the Plaintiff's claims, the Defendants admit that Marques "restrained the Plaintiff" but assert that the restraint "has been established . . . [as] lawful[]." (Doc. #53-1, at 16). However, this Court has not established that Defendant Marques' force was lawful; instead, the Court has determined that there is a significant factual dispute regarding the reasonableness, and by extension the lawfulness, of his restraint.

The Defendants further attempt to refute the Plaintiff's claim by stating that Marques had "no intent to confine [the Plaintiff], but merely to prevent [her] from proceed[ing] down the driveway[.]" (*Id.*). This statement is both conclusory and not persuasive. Despite the Defendants' attempt to avoid the word "confine," their description of preventing the Plaintiff's movement is precisely the type of action that may satisfy the definition of false imprisonment. *See Berry*, 223 Conn. at 821 ("false imprisonment [is properly defined] as the intentional, unlawful restraint or confinement of a person's liberty through the exercise of force . . . express or implied.") (internal quotations omitted). Even crediting Marques' account as true, his behavior was substantially certain to result in confinement of the plaintiff. *See Rivera*, 241 Conn. at 31.

Because there is still a genuine issue as to both the legality and reasonableness of Defendant Marques' use of force, the Defendants' motion for summary judgment as to the claim of false imprisonment against Defendant Marques is **DENIED.** In contrast, there is no evidence to suggest, and Plaintiff does not allege, that any of the remaining Defendant Officers ever restricted the plaintiff's liberty or otherwise confined her movement. Plaintiff also does not contend that the Defendant Officers exercised any force, either express or implied, in such an

attempt to confine her. Accordingly, the Defendants' motion as to claims of false imprisonment

against Defendants Cybulski, Arvai, Phillips, Bisnov, and Mullins is **GRANTED.**

9.   **Negligent Infliction of Emotional Distress**

"In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff

must show that 'the defendant should have realized that [his] conduct involved an unreasonable

risk of causing emotional distress and that that distress, if it was caused, might result in illness or

bodily harm.'" *Silberberg v. Lynberg*, 186 F. Supp. 2d 157, 176 (D. Conn. 2002) (quoting

*Montinieri v. S. New England Tel.*, 175 Conn. 337, 341 (1978)). The fear or distress experienced

by the plaintiff must be reasonable in light of the conduct of the defendant. *Id.* Although the

plaintiff need not demonstrate proof of physical injury, *Montinieri*, 175 Conn. at 344, a claim for

negligent infliction of emotion distress "does require that the plaintiff show that [she] suffered

some emotional distress." *Silberberg*, 186 F. Supp. 2d at 177. Courts have consistently held that

a plaintiff may state a claim for negligent infliction of emotional distress with a valid claim of

excessive force. *See, e.g.*, *Orellana v. Senecio*, No. 3:04cv843 (JBA), 2006 U.S. Dist. LEXIS

61326, at *11 (D. Conn. Aug. 29, 2006) (dispute regarding material fact of excessive force claim

precluded summary judgment on negligent infliction of emotional distress claim).

Defendants contend they are entitled to summary judgment as to the Plaintiff's negligent

infliction of emotional distress  claims because "the Plaintiff cannot establish that the conduct of

any of the Defendants was unlawful." (Doc. #53-1, at 17). Again, however, this Court has

determined that there are unresolved issues of material fact on the issue of excessive force with

respect to Defendant Marques but no issues of material fact on the alleged failure to intervene

with respect to the other Defendant Officers. Therefore, the Defendants' motion for summary

judgment on Plaintiff's claim of negligent infliction of emotional distress against Defendant Marques is **DENIED**, but is **GRANTED** with respect to the claims against Defendants Cybulski, Arvai, Phillips, Bisnov, and Mullins.

      10.      **Intentional Infliction of Emotional Distress**

A plaintiff claiming intentional infliction of emotional distress must demonstrate: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000) (internal quotation marks omitted). Liability for intentional infliction of emotional distress is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003). Before a claim for intentional infliction of emotional distress may be submitted to a jury in Connecticut, the court must first determine that the conduct may reasonably be regarded as "extreme and outrageous so as to permit recovery". *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175 (D. Conn. 2003) (internal quotation marks omitted).

The Defendants seek entry of summary judgment because "the lawful use of force to restrain the Plaintiff does not rise to the level of 'extreme and outrageous,' as it does not shock the conscience." (Doc. #53-1, at 18). This conclusory statement does not settle the disputed issues of material fact regarding the reasonableness of Marques' actions. Crediting the Plaintiff's account, Defendant Marques aggressively and intentionally put the Plaintiff in an unnecessary

and painful chokehold. This is conduct that could reasonably be judged "extreme and outrageous." However, because this Court has determined that the remaining Defendant Officers were not unreasonable in their failure to intervene, their conduct does not "go beyond all possible bounds of decency" and cannot support a claim for intentional infliction of emotional distress. *See Carrol*, 262 Conn. at 443. Therefore, the Defendants' motion for summary judgment as to the claims of intentional infliction of emotional distress against Defendants Cybulski, Arvai, Phillips, Bisnov, and Mullins is **GRANTED.**

The Plaintiff must also demonstrate that the emotional distress she suffered as a result of Defendant Marques' actions was severe. Emotional distress is "severe" when it is so extreme no reasonable person could be expected to endure it.  *See Almonte v. Coca-Cola Bottling Co. of N.Y., Inc.*, 959 F. Supp. 569, 575 (D. Conn. 1997). What, exactly, a reasonable person is expected to endure is imprecise, however, and "[i]t is not clearly established [under Connecticut law] that failure to seek medical treatment precludes a showing of severe emotional distress sufficient to establish a claim of intentional infliction of emotional distress." *Birdsall*, 249 F. Supp. 2d at 175.

"[M]erely alleging 'extreme emotional distress' without supporting factual allegations is legally insufficient to support a claim of intentional infliction of emotional distress." *Nordstrom v. GAB Robins North America, Inc.*, No. 3:09-CV-771 (RNC), 2012 WL 1094645, at *3 (D. Conn. Mar. 31, 2012) (internal quotation marks omitted). The supporting factual allegations must be more than conclusory statements. *See id.*; *see also Silberberg*, 186 F. Supp. 2d at 176 (granting defendant's motion for summary judgment because plaintiff's statements, alone, did not indicate that he suffered "severe" mental distress). When a plaintiff's deposition testimony

-23-

contains only  conclusory statements that he has suffered distress and the plaintiff has not

submitted corroborating evidence of medical treatment, courts have granted summary judgment

in the defendant's favor. *See, e.g.*, *Reed v. Signore Corp.*, 65 F. Supp. 129, 137  (D. Conn. 1986)

(plaintiff's testimony that not being rehired in a position for which he was qualified was

"distressing and implie[d] incompetence" was insufficient to survive summary judgment when

plaintiff did not seek medical assistance).

      Here, the Plaintiff alleges in her complaint that the Defendants' actions caused her

"emotional distress" and, generally, "that the emotional distress sustained by [her] was severe."

(Doc. #1, at 7). Her deposition, however, provides more detail regarding her alleged "severe"

emotional distress. The Plaintiff begins by noting that she had been taking medication for

depression and anxiety, before the incident with Defendant Marques, as a result of her ex-

husband's death. Next, the plaintiff indicates that she currently takes medication for migraine

headaches, which first developed after the altercation with Defendant Marques. The Plaintiff also

testified  that she takes medication for "high anxiety and panic attacks" that are related to the

Plainville Police Department, specifically "why the officer choked [her]," and has been

recommended to see a psychiatrist. (Doc. # 53-3, at 8, 22:2-23:5). Finally, the plaintiff reiterated

that the choking incident is a source of her anxiety and that her anxiety is a recurrent problem.

      While this deposition testimony may not rise to the level of "medical evidence," it is not

clear that such evidence is required. *See Birdsall*, 249 F. Supp. 2d at 175. At the very least, the

Plaintiff's statements provide evidence of medical consultation and assistance. Additionally, the

Plaintiff's testimony provides factual allegations that support her claim of extreme emotional

distress.  Despite the Plaintiff's statement that she had residual depression and anxiety stemming

from the death of her ex-husband, she provides some evidence of migraines, anxiety, and panic

attacks that stem from Defendant Marques' use of force. This is substantially more evidence than

the plaintiff had in *Reed*, where his only evidence was his testimony characterizing the

defendant's actions as "distressing." Similarly, the Plaintiff's evidence of being referred to a

psychiatrist as a result of this encounter is stronger than in *Almonte*, where the court sought

evidence of medical treatment for depression and anxiety to demonstrate that the symptoms were

"severe." *See Almonte*, 959 F. Supp at 575-76.

Moreover, summary judgment on a claim for intentional infliction of emotional distress is

often inappropriate when there is an associated excessive force claim with disputed issues of fact.

*See, e.g.*, *Brown v. Catania*, No. 3:06cv73 (PCD), 2007 WL 879081, at *10 (D. Conn. Mar. 21,

2007) ("Because the Court has found material issues of fact with regard to Plaintiff's excessive

force claim, summary judgment is also improper on Plaintiff's intentional infliction of emotional

distress claim."); *see also McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999) (when there were

genuine issues of material fact regarding the use of force, the question of whether the conduct

was extreme and outrageous to establish a claim for intentional infliction of emotional distress

was a question for the jury).

Therefore, because (a) it is not clear that medical evidence is required for a finding of

"severe" emotional distress, (b) the plaintiff presents significant, non-conclusory statements

supporting a finding of "severe" emotional distress, and (c) summary judgment is often

inappropriate for claims of intentional infliction of emotional distress when there is an associated

excessive force claim with unresolved issues of fact, the motion for summary judgment with

respect to the claim of intentional infliction of emotional distress against Defendant Marques is **DENIED**.


11.        **Municipal Liability**

Finally, the Plaintiff alleges the Town of Plainville is liable  pursuant to Connecticut General Statutes § 52-557n and § 7-465. Specifically, the plaintiff claims pursuant to § 52-557n that she was an "identifiable victim that was subjected to imm[i]nent harm," and pursuant to § 7-465 that the "municipality is required to indemnify municipal employee(s) who cause physical injury and/or violate an individual[']s civil rights." (Doc. #1, at 9, ¶ 20). The Defendants counter that, "Plaintiff's own acts, in inviting the harm, do not make her an identifiable victim, as the Plaintiff was not subjected to any imminent harm prior to attempting to intervene in the officers' ongoing investigation and arrest." (Doc. #53-1, at 25).

a.    ***Conn. Gen. Stat. § 52-557n***

Section 52-557n(a)(1) provides that, "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by [] the negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties[.]"  However, that statute also extends the same  "discretionary act" immunity that applies to municipal officials to the municipalities themselves by providing that, "a political subdivision of the state shall not be liable for damages to person or property caused by . . .  negligent acts or omissions which require

the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2)(B).

The "discretionary act" immunity provision of  § 52-557n has been interpreted to mean that, "[g]enerally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts." *Belanger v. City of Hartford*, 578 F. Supp. 2d 360, 366 (D. Conn. 2008) (internal quotation marks omitted).  Protected governmental acts are those acts "performed wholly for the direct benefit of the public and are supervisory or discretionary in nature," whereas unprotected ministerial acts are those acts "which [are] to be performed in a prescribed manner without the exercise of judgment or discretion." *Spears v. Garcia*, 263 Conn. 22, 36 (2003). Governmental immunity will attach when a municipal employee's actions are discretionary, unless one of the following three exceptions apply. "First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Doe v. Peterson*, 279 Conn. 607, 615 (2006) (internal quotation marks and citations omitted).

The Plaintiff alleges in her complaint that the third exception to governmental immunity, the identifiable person-imminent harm exception, applies here.  "The Connecticut Supreme Court has laid out a three part test for the identifiable person-imminent harm exception to apply: '(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his

or her conduct is likely to subject that victim to that harm." *Belanger*, 578 F. Supp. 2d at 367

(quoting *Peterson*, 279 Conn. at 616). Courts in this district have applied this test, recognizing

the identifiable person-imminent harm exception, in the context of excessive force claims. *See,*

*e.g.*, *Carey v. Maloney*, 480 F. Supp. 2d 548, 560 (D. Conn. 2007) (defendants were not entitled

to summary judgment because, crediting plaintiff's claims of excessive force as true, the plaintiff

was an identifiable victim and suffered imminent harm); *Galindez v. Miller*, 285 F. Supp. 2d 190,

195 (D. Conn. 2003) (genuine issue of material fact regarding defendant's use of force precluded

summary judgment because plaintiff could produce evidence to support liability under the

identifiable person-imminent harm exception).

 Similarly, "Connecticut courts have held that where, as here, an officer is alleged to have

used excessive force against a person, he may be found to have subjected an identifiable person

to imminent harm and therefore is not protected from suit by the doctrine of governmental

immunity." *Odom v. Matteo*, 772 F. Supp. 2d 377, 395; *see, e.g.*, *Balogh v. City of Shelton*, No.

CV990067521S, 2002 WL 523225, at *8 (Conn. Super. Ct. Mar. 18, 2002) (denying summary

judgment on governmental immunity basis because plaintiff offered sufficient evidence that her

arrest with excessive force subjected her to harm that was significant, foreseeable, and of limited

duration).

 Therefore, because there are genuine issues of material fact regarding whether Defendant

Marques used excessive and unreasonable force against the Plaintiff, governmental immunity as

a matter of law is improper and Defendants' motion for summary judgment as to the claim of

liability on the part of the Town pursuant to Conn. Gen. Stat. § 52-557n  is **DENIED**.

b.   ***Conn. Gen. Stat. § 7-465***

"Section 7-465 is an indemnity statute; it does not create liability." *Odom*, 772 F. Supp. at 407 (internal quotation marks omitted). "[T]he municipality's duty to indemnify attaches only when the employee is found to be liable and the employee's actions do not fall within the exception for willful and wanton acts." *Id.*(internal quotation marks omitted). Importantly, § 7-465 does not impose liability on a municipality for the breach of any statutory duty of its own. *See Ahern v. New Haven*, 190 Conn. 77, 82 (1983). "The obligation imposed by this statute is indemnification for the legal liability arising out of certain tortious conduct of the municipal employee," and therefore, the municipality's liability is best characterized as derivative. *Id.* "A plaintiff bringing suit under General Statutes § 7-465 first must allege in a separate count and prove the *employee's* duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the municipality's liability by indemnification." *Sestito v. City of Groton*, 178 Conn. 520, 527 (1979).

Here, the Court has denied Defendant Marques' motion for summary judgment because genuine issues of material fact remain regarding his use of force. Thus, genuine issues of material fact necessarily still exist regarding the Plaintiff's claim against the Town for indemnification, making summary judgment inappropriate.  Accordingly, the Defendants' motion for summary judgment as to the claim of liability on the part of the Town pursuant to Conn. Gen. Stat. § 52-557n  is **DENIED**.

### III.CONCLUSION

For the reasons discussed above, the Defendants' Motion for Summary Judgment (**Doc. #53**) is **GRANTED IN PART** and **DENIED IN PART.**

-29-

Specifically, the motion is granted insofar as it seeks summary judgment with respect to: (1) all federal claims against Defendant Officers Cybulski, Arvai, Phillips, Bisnov, and Lieutenant Mullins (included in the First Count); (2) all state claims against Defendant Officers Cybulski, Arvai, Phillips, Bisnov, and Lieutenant Mullins (included in the Second Count); (3) the state common law claim of negligence against Defendant Marques (included in the Second Count); and (4) the federal municipal liability claim against the defendants Town of Plainville and Chief Coppinger (included in the Third Count).

The motion is denied and the case will proceed as to the following claims: (1) the federal law claims against Defendant Marques (included in the First Count); (2) the state law claims, other than negligence, against Defendant Marques (included in the Second Count); and (3) the state municipal liability claims against the defendant Town of Plainville (included in the Fourth Count).

**So ORDERED** this   30th    day of September,  2013.

_____/s/ DJS_____
Dominic J. Squatrito
United States District Judge

-30-