**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MARYANNE ZADROWSKI** | : | **CIVIL ACTION NO.** |
| *Plaintiff* | : | **3:09-cv-1367 (MRK)** |
| | : | |
| **V.** | : | **TRIAL BY JURY** |
| | : | |
| **TOWN OF PLAINVILLE, CHIEF DANIEL** | : | |
| **COPPINGER, in his individual and official** | : | |
| **capacity; LIEUTENANT BRIAN MULLINS,** | : | |
| **in his individual and official capacity;** | : | |
| **SERGEANT RICHARD MARQUES, in his** | : | |
| **individual and official capacity; OFFICER** | : | |
| **BRIAN CYBULSKI, in his individual and** | : | |
| **official capacity; OFFICER GREG ARVAI,** | : | |
| **in his individual and official capacity;** | : | |
| **OFFICER SHANE PHILLIPS, in his** | : | |
| **individual and official capacity; OFFICER** | : | |
| **MICHAEL BISNOV, in his individual and** | : | |
| **official capacity** | : | |
| *Defendants* | : | **DECEMBER 9, 2013** |

<u>**PARTIES' JOINT TRIAL MEMORANDUM**</u>

1. **TRIAL COUNSEL**

   For the Plaintiff:

   > A. Paul Spinella
   > Spinella & Associates
   > 1 Lewis Street
   > Hartford, CT 06103
   > Tel: (860) 728-4900
   > Fax: (860) 728-4909
   > attorneys@spinella-law.com

   For the Defendants:

   > Russell N. Jarem, Esq.
   > Gordon, Muir & Foley, LLP
   > Ten Columbus Boulevard, Third Floor

{00747076.DOCX}

- 1 -

Hartford, CT 06106
Tel: (860) 525-5361
Fax: (860) 525-4849
rjarem@gmflaw.com

**2.    JURISDICTION**

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1343(3), 1367(a) and 42 U.S.C. § 1983 and 1988.

**3.    JURY / NON-JURY**

This matter is to be tried before a jury.

**4.    LENGTH OF TRIAL**

The parties estimate that the evidence phase of the trial will last 5 days.

**5.    FURTHER PROCEEDINGS**

None.

**6.    NATURE OF CASE**

**A.    Plaintiff's Statement of the Nature of the Case.**

This case arises out of the arrest of the plaintiff, Maryanne Zadrowski, by the defendant police officer, Richard Marques, from the Town of Plainville.  The plaintiff brings this civil action for violations of her rights secured and protected by 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution, Article First, §§ 7 and 9 of the Connecticut Constitution, and under the laws of the State of Connecticut, for which she seeks compensatory and punitive damages, declaratory and injunctive relief, as well as attorneys fees and costs.

**B.    Defendants' Statement of the Nature of the Case**

The Plaintiff has alleged that the Defendant, Richard Marques, used excessive force upon her in the course of an incident which took place on October 27, 2008.

**7.    JURY TRIAL**

{00747076.DOCX}

- 2 -

This matter is set for a jury trial.

8.    **EVIDENCE**

   A.    **Plaintiff's Witnesses**

   Maryanne Zadrowski
   17 Old Waterbury Road
   Terryville, CT 06786-6821

   The plaintiff will testify about her actions and observations during the course of her interaction with Sergeant Marques and the physical and psychological injuries she sustained as a result.

   **Fact Witnesses Likely To Testify**.  The following were witnesses to the incidents of the night of October 27, 2008. Length of testimony for each witness- 1-2 hours.

   i.   Brittany Damboise (address unknown)

   ii.   Walter Zadrowski
         129 Shuttle Meadow Road
         Plainville, CT 06062

   iii.   Barbara Zadrowski
          129       Shuttle Meadow Road
          Plainville, CT 06062

   iv.   Joseph Bright
         17 Old Waterbury Road
         Terryville, CT 06786-6821

   v.   Richard Bright
        17 Old Waterbury Road
        Terryville, CT 06786-6821

   **Plaintiff's Expert Witnesses**

   i.   Beverly Greenspan, M.D.
        UCONN Health Center
        263 Farmington Avenue
        Farmington, CT 06030

T.  (860) 679-7692

**Opinion**.    Dr. Greenspan is expected to testify as to the nature and extent of the Plaintiff's injuries as they relate to causation and/or damages, including the nature and extent of any permanent partial disability.

**Basis of Opinion.**  Dr. Greenspan will testify based upon extensive medical experience. The testimony will assist the trier of fact in understanding the nature and extent of the injuries and symptoms suffered by the Plaintiff, including what caused the injuries, how the symptoms manifested themselves, how the injuries have affected and will continue to affect the the Plaintiff.

**Materials**.  Medical records.

**Expert Report**.  Attached.

**Area of Expertise**.  Medicine.

**Duration**.  Witness testimony will approximately 3-4 hours.

**Likely to Testify**.  Yes.

ii.  Nadeem Behjet, M.D.
202 Queen St.
Bristol, CT 06010
T. (860) 583-1605

**Opinion**.    Dr. Behjet is expected to testify as to the nature and extent of the Plaintiff's injuries as they relate to causation and/or damages, including the nature and extent of any permanent partial disability.

**Basis of Opinion.**  Dr. Behjet will testify based upon extensive medical experience. The testimony will assist the trier of fact in understanding the nature and extent of the injuries and symptoms suffered by the Plaintiff, including what caused the injuries, how the symptoms manifested themselves, how the injuries have affected and will continue to affect the the Plaintiff.

**Materials**.  Medical records.

**Expert Report**.  Attached.

{00747076.DOCX}

**Area of Expertise**.  Medicine.

**Duration**.  Witness testimony will approximately 3-4 hours.

**Likely to Testify**.  Yes

### B.    Defendants' Witnesses

Sergeant Richard Marques
Plainville Police Department
19 Neal Court
Plainville, CT 06062

Sergeant Marques will testify about his actions and observations during the course of his supervision at the scene, as well as his interaction with the Plaintiff.

**Fact Witness Likely to Testify:** The Defendant reserves the right to call anyone listed by the Plaintiff as a possible witness. In addition, the Defendant represents that the following were witnesses and/or have personal knowledge of the events that took place on October 27 and October 28, 2009.

| | |
|---|---|
| Brian Mullins<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 | Brian Cybulski<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 |
| Michael Bisnov<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 | Shane Phillips<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 |
| Steven Chase<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 | Greg Arvai<br>Plainville Police Department<br>19 Neal Court<br>Plainville, CT 06062 |
| Robert Wales<br>Bristol Police Department<br>131 North Main Street<br>Bristol, CT 06010 | |

{00747076.DOCX}

**C.     Plaintiff's Exhibit List.  In addition to the exhibits offered by the Defendants, the plaintiff relies on the following:**

     i.     CD of all Phone Calls Made and Recorded Between the Plaintiff and the Plainville Police Department

     ii.    Audio Phone Call, Maryanne Zadrowski to Plainville Police: 10-27-2008

     iii.   Second Audio Phone Call, Maryanne Zadrowski to Plainville Police:  10-27-2008

     iv.    Audio Phone Call: Maryanne Zadrowski 10/28/2012

     v.     Second Audio Phone Call: Maryanne Zadrowski 10/28/2012

     vi.    Deposition of Maryanne Zadrowski

     vii.   Deposition of Brian Mullins

     viii.  Deposition of Walter Zadrowski

     ix.    Deposition of Richard Zadrowski

     x.     Plainville Police Department General Order 25

     xi.    Plainville Police Department Operation Procedures Manual

     xii.   Plainville Police Department EBS Prisoner Interview- Walter Zadrowski

     xiii.  Plainville Police Department Mullins Personnel File

     xiv.   Plainville Police Department, Mullins Training History

     xv.    Plainville Police Department, Marques Personnel File

     xvi.   Plainville Police Department Incident Report, Greg Arvai

     xvii.  Dr. Behjet, M.D.  (medical records)

| | | | |
|---|---|---|---|
| Office visit | 10/28/08 | $ | 110.00 |
| Office visit | 10/31/08 | $ | 110.00 |

| | | | |
|---|---|---|---|
| Office visit | 11/14/08 | $ | 110.00 |
| Office visit | 12/12/08 | $ | 110.00 |
| Office visit | 01/23/09 | $ | 110.00 |
| Office visit | 02/03/09 | $ | 110.00 |
| Office visit | 02/18/09 | $ | 110.00 |
| Office visit | 04/20/09 | $ | |
| office visit | 04/24/09 | $ | |
| office visit | 05/04/09 | $ | |
| office visit | 05/08/09 | $ | |
| office visit | 06/05/09 | $ | |
| office visit | 06/12/09 | $ | |
| office visit | 06/24/09 | $ | |
| office visit | 07/22/09 | $ | |
| | 08/19/09 no show | $ | |
| office visit | 09/15/09 | $ | |
| office visit | 12/16/09 | $ | 109.00 |
| office visit | 01/12/10 | $ | 117.00 |
| office visit | 02/12/10 | $ | 109.00 |
| office visit | 04/12/10 | $ | 109.00 |
| office visit | 06/11/10 | $ | 109.00 |
| office visit | 08/25/10 | $ | 171.00 |
| office visit | 09/07/10 | $ | 109.00 |
| office visit | 09/28/10 | $ | 171.00 |
| | | | |
| Final disability report | 11/24/10 | | |

**_Bristol Radiology Center_**

| | | | |
|---|---|---|---|
| c-spine | 11/03/08 | $ | 126.00 |
| spine-thoracic | 04/27/09 | $ | 100.00 |
| u/s gallbladder | 06/08/09 | $ | 210.00 |
| CT head w/o contrast | 02/12/10 | $ | |

**_Farmington Imaging Center_**

| | | | |
|---|---|---|---|
| MRI Brain / no contrast | 01/27/09 | $ | 1,271.00 |

**_Beverly Greenspan, M.D. / University of Connecticut_**

| | | | |
|---|---|---|---|
| office visit | 05/18/09 | $ | 315.00 |
| office visit | 03/22/11 | $ | 185.00 |

**_UConn Health Center_**

| | | | |
|---|---|---|---|
| | 06/01/09 | $ | 1,265.00 |
| MRI cervical spine | | | |
| MRI neck spine | 06/01/09 | $ | 290.00 |

{00747076.DOCX}

xviii.    Dr. Beverly Greenspan Expert Report

**D.    Defendants' Exhibit List**

In addition to those exhibits identified by the Plaintiff, the Defendant intends to rely upon the following:

a)  CD of all Phone Calls Made and Recorded Between the Plaintiff and the Plainville Police Department
b)  Plainville Police Prosecutor's Report #2008-15162
c)  Voluntary Statement of Walter Zadrowski, Case No 2008-15162
d)  Birds-eye view of Property located at 129 Shuttle Meadow Road, Plainville, CT
e)  Plaintiff's Responses to Discovery and Requests For Production, including all supplements

**E.    Objections to Admissibility**

**1.    Plaintiff's Objections**

**2.    Defendants' Objections**

**3.  Objections to Defendants' Exhibits**

**4.  Objections to Plaintiff's Exhibits**

**F.    Deposition Testimony**

The parties reserve the right to use deposition testimony of all those deposed in this matter to impeach any inconsistent statements made at trial.

The parties also reserve the right to use the deposition testimony to rehabilitate any statements at trial which are subject to impeachment by the opposing party, as appropriate.

**9.    STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**A.    Stipulations of Law**

{00747076.DOCX}

1.    The Fourth Amendment to the United States Constitution governs the Plaintiff's excessive force claim.

**B.    Stipulations of Fact**

1.    The Plaintiff is a resident of Terryville, Connecticut.

2.    The defendant officer Sergeant Richard Marques was, at all relevant times, a member of the Plainville Police Department.

**C.    Conclusions of Law**

Sergeant Richard Marques was acting under color of state law and within the scope of his employment with the Town of Plainville Police Department during all relevant times on the evening October 27, 2008.

**D.    Contested Issues of Fact and Law**

The parties contest the nature of the incidents on the night of October 27, 2008.

**1. Plaintiff Contested Facts**

On the night of October 27, 2008, the plaintiff, Maryanne Zadrowski, contacted the Plainville Police Department out of concern that her son, Richard Bright, might try to harm himself. At the time, Richard was staying with plaintiff's brother, Walter Zadrowski, and plaintiff's mother, Barbara Zadrowski.

Walter Zadrowski called the plaintiff that night to inform her that he and Richard had had an argument, and Richard threatened to kill himself. The plaintiff called Richard on his cell phone and he reiterated that he wanted to kill himself.   The plaintiff then called the Plainville Police Department, and asked for them to send someone over to protect Richard from harming himself, and to get him to a hospital for emergency psychiatric care.

The Defendants, Officers, Brian Cybulski, Greg Arvai, Shane Philips, and Michael Bisnov responded to the call.  When they arrived, they observed Richard acting in an intoxicated and agitated manner. One or more of the officers interrogated Walter Zadrowski about Richard's actions.  After interrogating Walter, the officers handcuffed him Walter and led him back to a police cruiser.

{00747076.DOCX}

The plaintiff did not understand the reasons why the officers arrested Walter and asked them to explain why they arrested him. The officers did not answer at first, but then later, when the plaintiff persisted in asking what charges they were arresting her brother on, an officer remarked that they would figure that out when they got back to the station.  The plaintiff called the Plainville Police Department to complain about the arrest, and Defendants Lieutenant Brian Mullins and Sergeant Richard Marques. The officers then arrested Richard.

After police arrested Walter and Richard, the plaintiff announced that she was going to call her attorney; which she did to ask about the legality of the officers' actions. As she retrieved her cell phone and dialed Sergeant Richard Marques came behind her, without any warning, and put his right arm around my neck, choking me violently, twisting my arm behind my back and telling me that I was "not going to fucking call anyone."

The plaintiff had not threatened, verbally or physically, any officer or other person or engaged in any behavior which would have led the officers present, including Sgt. Marques, to reasonably believe that using any force, much less choking, was justified to protect themselves or other people from the threat of physical harm, or to keep the plaintiff from interfering with officers engaged in their lawful duties, or to overcome resistance to arrest.  The plaintiff was not placed under arrest and was not charged with any crime.

After many seconds of choking the plaintiff hard enough to make breathing difficult and screaming impossible, the sergeant released his choke hold. Fearful for her safety, the plaintiff tried to enter the home of her mother. No officer in my presence said anything to the sergeant about the attack or talked to the plaintiff. Instead, the officers present continued to behave in an abusive manner, demanding that plaintiff's mother grant them access to the house despite no legal authority to do so, and threatening to throw her from the porch and to shoot her dog if she did not grant the officers entrance into the house.

As a result of Sgt. Marques's choking assault, the plaintiff suffered serious injury and a 5% permanent partial disability to her neck at C5-C6, causing pain and hampering her ability to engage in physical labor, diminishing my job opportunities, and reducing my ability to enjoy activities.  The plaintiff had been accustomed to a physically active lifestyle and cared for several children and a young grandchild prior to the attack by Sgt. Marques, but now suffers from pain and fatigue when she engages in common chores like raking leaves, grocery shopping, and cleaning.  She no longer enjoys sports she had enjoyed prior to the assault, such as volleyball and

badminton.  She also suffers from post-traumatic stress disorder, anxiety and depression as a result of the attack.

**Defendant's contested issues of fact**

The Plaintiff's claims arise from an incident which occurred on the evening of October 27, 2008. As the Plaintiff's Complaint provides, the Plaintiff contacted the Plainville Police Department out of concerns for her son's health. During the course of the Police Department's interaction with the Plaintiff and her family, the Plaintiff was briefly restrained by Sergeant Marques due to her behavior. It is from this restraint that the Plaintiff's complaint arises; the context of the dispute is set forth below.

The Plaintiff's initial contact with the Police Department was by way of the Department's dispatcher. The Plaintiff stated she was on her way to a Getty Station to with her son, because she was afraid her son would kill himself and she wanted the police to intervene.  The officer was wondering it would be better to come directly to the house.  The plaintiff tells the officer that her mother does not want the neighbors to know about it, and would it be possible for them to come with no lights. Multiple phone calls and conversations take place over the following minutes, as the Dispatcher alternatively inquires as to the safety of her son (as she had indicated that he was threatening to get a gun and shoot himself) and responds to the Plaintiffs requests for officers on scene. When asked whether the Plaintiff's son had access to weapons, the Plaintiff informed the dispatcher that her brother may have guns in the house, but "they are well secured". The Plaintiff's son can be heard in the background, swearing and ranting, establishing a scene of an out of control youth with access to weapons.

Multiple officers responded to the call, due to the timing of the request. A shift change was occurring, which led to additional officers being dispatched. Once on the property, the officers began assessing the situation. At the time, several individuals were on the property – Plaintiff's brother, Walter Zadrowski; Plaintiff's mother, Barbara Zadrowski; Plaintiff's younger son and his girlfriend, Joey Bright and Brittany Damboise; and Plaintiff's elder son (the subject of the call), Richard Bright. At the time of the response, Richard Bright remained belligerent.

In investigating the issue, the officers determined that Richard Bright was a minor and intoxicated. It was disclosed that he had threatened to kill himself while in this state to the Plaintiff's brother, who in turn handed the minor, intoxicated Bright and unloaded rifle with words to the effect of "Go ahead". A search of Mr. Zadrowski's person revealed that he had a loaded magazine, which fit the weapon handed to Richard

Bright. By this course of action, the officers determined that Walter Zadrowski had acted improperly and was subject to arrest for Reckless Endangerment of a Minor.

During the course of this investigation, Walter Zadrowski was kept separate from the rest of the family. Communications with Walter took place near the police cars parked on the street, while communications with the Plaintiff and her son took place on the side of the house, set back from the street. Once the officers concluded that Walter Zadrowski was subject to arrest, he was handcuffed and placed in a police car, at which point the Plaintiff and her son repeatedly berated the officers and railed against their actions, claiming that he shouldn't be arrested. Upon Walter's arrest, both the Plaintiff and Richard Bright lost control. In addition to berating the officers, the Plaintiff made several profanity-laced phone calls to the Dispatcher, requesting a superior officer. Due to the potential involvement of weapons, Lieutenant (now Captain) Mullins accompanied the Sergeant to the property.

Once on the property, and in the midst of this ongoing fracas, Capt. Mullins and Sgt. Marques assessed the situation, which included determined whether an ambulance was needed for Richard Bright's condition. During this period, the Plaintiff was in a tirade screaming and cursing, generally at Richard and the police officers. Richard Bright was yelling and screaming also about killing himself, while also threatening the cops. None of his verbal threats turned into physical threats, however, Capt. Mullins spoke to him in an attempt to judge his present mental and physical state. At this time, and while Walter Zadrowski was being arrested, the Plaintiff attempted to proceed towards the officers in an aggressive and loud fashion. As the Plaintiff attempted to do so, Sergeant Marques took her by the shoulder and restrained her from getting any closer, with the intent of ensuring that the matter did not devolve further. At the scene, no individual complained about having been assaulted nor did anyone appear to be in distress.

Several phone calls are made to the dispatcher following the departure of the Police Department with Richard Bright and Walter Zadrowski, each of which evidence the nature of the Plaintiff and the volatile situation in which the officers found themselves. A total of thirteen (13) are made across the night. At no point did the Plaintiff request to make a complaint of any nature regarding the handling of the matter.

## 2.  Plaintiff's contested issues of law

**42 U.S.C. Sec. 1983 Excessive Force.**
Defendant Marques had absolutely no justification to use physical force against Maryanne Zadrowski.

The defendant officer, Richard Marques, has justification of the use of force against Maryanne Zadrowski, nor is any justification apparent from the facts for Sergeant Marques to place Maryanne Zadrowski in a choke hold. Maryanne Zadrowski was not engaged in the commission of any crime and was not charged with any crime.

The authority of police officers to use physical force is defined by General Statutes § 53a-22. Section 53a-22 reads in relevant part:

> [A] peace officer . . . is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

She did not use force or threaten or indicate that she was about to use force against any of the officers or other persons present at the scene of the incident, and the officers were not presented with circumstances where the use of force was necessary to effect an arrest of Maryanne Zadrowski or to prevent her escape. No reasonable officer could have believed that the use of force was justified to prevent the use of force against an officer or a third person or to effect an arrest or to prevent an escape.

Sergeant Marques attacked and choked Maryanne Zadrowski out of anger at the fact that she was calling her attorney, which was within her rights to do. This attack was completely unwarranted by law and constitutes an unreasonable seizure in violation of the Plaintiff's rights under the Fourth and Fourteenth Amendment to the United States Constitution, Articles 7 and 9 of the Connecticut Constitution, and assault, battery, false imprisonment and infliction of emotional distress at common law.

**Qualified Immunity.**
**The defendant is not entitled to qualified immunity.**  "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly- established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To overcome this protection, a plaintiff must first allege the violation of a clearly established constitutional or statutory right, and second, that a reasonable official should have known that the challenged conduct violated that established right. See id. at 142-43. Reasonableness is determined on the basis of the facts and circumstances of the particular case.

Plaintiff argues that the defendant is not entitled to qualified immunity because no reasonable officer could believe that choking a suspect who was not a threat to his or her physical safety was warranted under any circumstances.

**Battery**
**The defendant's actions constituted a battery.**  "To establish a claim for assault and battery, plaintiff must [only] prove that defendants applied force or violence to her and that the application of force or violence was unlawful." Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999) (citing Moriarty v. Lippe, 162 Conn. 371, 389 (1972)).  For the same reasons Marques's actions constituted excessive, force, he should also be liable for common law battery.

**Recklessness.**
**The defendant acted with recklessness when he choked the plaintiff.**
"One is guilty of reckless misconduct when 'knowing or having reason to know of facts which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' Restatement [(Second) of] Torts[] § 500." Craig v. Driscoll, 64 Conn. App. 699, 721 (2001) (internal quotation marks omitted), aff'd, 262 Conn. 312 (2003).

**False imprisonment.**
**The defendant falsely imprisoned the plaintiff.**  "False imprisonment . . . is the unlawful restraint by one person of the physical liberty of another." Odom v. Matteo, 772 F. Supp. 2d 377, 396 (D. Conn. 2011) (internal

{00747076.DOCX}
- 14 -

quotation marks omitted).   Marques' act of choking, and thereby restraining the plaintiff constituted common law false imprisonment.

**Negligent infliction of emotional distress.**
**The defendant negligently inflicted emotional distress on the plaintiff.**   "[T]o prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that 'the defendant should have realized that [his] conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm.'" Silberberg v. Lynberg, 186 F. Supp. 2d 157, 176 (D. Conn. 2002) (quoting Montinieri v. S. New England Tel., 175 Conn. 337, 341 (1978)).   The defendant's act of choking the plaintiff without justification also was sufficient to establish her claim for negligent infliction of emotional distress.

**Intentional infliction of emotional distress.**
**The defendant intentionally inflicted emotional distress on the plaintiff.**   A plaintiff claiming intentional infliction of emotional distress must demonstrate: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Educ., 254 Conn. 205, 210 (2000).   The defendant's conduct was extreme and outrageous, and caused the plaintiff to suffer physical and emotional distress in the form of depression, anxiety, and migraines, for which she had been taking medication, and for which she had seen a psychiatrist.

**Indemnification.**   Pursuant to Sections 7-465 and 52-557n of the Connecticut General Statutes, the Town is derivatively liable for the torts and violations of civil rights by its municipal employee.


**Defendant's Contested Issues of Law**

**The use of force by Defendant Marques was reasonable and necessary, in light of the circumstances**

Determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "It is

{00747076.DOCX}

well established that the 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.' " *Stephenson v. Doe,* 332 F.3d 68, 77 (2d Cir.2003) (quoting *Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Reasonableness is judged from the perspective of a "reasonable officer on the scene," not in hindsight. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. It depends on factors specific to each particular case, like (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 397, 109 S.Ct. 1865.

The Plaintiff's conduct in this case, combined with the totality of the circumstances, provides that the conduct of Sgt. Marques was a reasonable act of an officer. Given the proximity of weapons, an intoxicated minor and overt threats of violence both against the responding officers and the complainants required the separation of all of the parties, both to diffuse the situation and ensure the officers safety. The Plaintiff's actions, in attempting to intervene, threatened to ignite a volatile scenario. The conduct of Sgt. Marques, in quickly restraining her, was therefore objectively reasonable.

Further, as the Supreme Court has explained, qualified immunity covers "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986). A court deciding whether a party is protected from suit under qualified immunity must first ask whether that individual's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir.2001) If that question is answered in the positive, the court must then ask whether "it was 'objectively reasonable' for [the official] to believe that his actions were lawful at the time of the challenged act." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987)) (other citations omitted).

**The Plaintiff's common law claims are without merit**

The evidence will show that the use of force by Sergeant Marques was reasonable in light of the circumstances.

<u>Negligence</u>

The Plaintiff will not be able to establish that the Defendant brached a duty owed to her. Further, Sergeant Marques is entitled to the application of governmental immunity on the claim of negligence, as the actions of a

police officer are discretionary, and the Plaintiff is not subject to any exception. *See Parrott v. City of Hartford, et al.,* Civil Action No. 3:10-CV-01465, <u>Amended Ruling Re: Defendants' Motion for Partial Summary Judgment</u>, dated October 23, 2012 (Exception to immunity does not apply in negligence claims based on allegations of excessive force, as there is no "failure to act").

<u>Recklessness</u>

The theory of recklessness requires that the Plaintiff establish that the actions of the Defendant were unreasonable. In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. Such conduct is more than negligence, more than gross negligence.... It is such conduct as indicates a reckless disregard of the just rights or safety of others" *Elliott v. City of Waterbury,* 245 Conn. 385, 414, 715 A.2d 27 (1998) (internal quotations omitted).

The severity of the actions of the Defendant is *de minimis*, and reflects the amount of force necessary to ensure that the Plaintiff did not further instigate matters. The Plaintiff has presented no evidence to suggest that the Defendants had any other state of mind.

<u>Assault & Battery</u>

In order to establish a claim for common law assault and battery, plaintiff must prove that the defendant applied harmful or offensive contact with the person of another.  The contact must be unlawful and the direct and immediate consequence of a force exerted by the defendant intentionally, wantonly, or recklessly. *Williams v. Lopes,* 64 F.Supp. 2d. 37 (D.Conn. 1999).

As can readily be inferred from the facts of this action, the use of force by Sergeant Marques was *de minimis* and wholly necessary to prevent the Plaintiff from interfering with the work of the other officers and potentially inciting further an already volatile scenario. The only complacent party, through the course of the evening, was Walter Zadrowski. The Plaintiff, in contrast, consistently screamed threats and profanity, directed at both the officers and her minor, intoxicated son. In order to avoid further unnecessary confrontation, the Plaintiff was appropriately restrained.

<u>False Imprisonment</u>

{00747076.DOCX}

"[F]alse imprisonment is the unlawful restraint by one person of the physical liberty of another." *Felix v. Hall-Brooke Sanitarium*, 140 Conn. 496, 499, 101 A.2d 500 (1953). As will be established, Sgt. Marques lawfully restrained the Plaintiff in order to ensure that the Plaintiff did not have an opportunity to interject her raucous and volatile behavior into an already excited scenario.

Negligent Infliction of Emotional Distress

In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." *Montinieri v. Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180, 1184 (1978).  Further, Sergeant Marques is entitled to the application of governmental immunity on the claim of negligent infliction of emotional distress, as the actions of a police officer are discretionary, and the Plaintiff is not subject to any exception. *See Parrott v. City of Hartford, et al.,* Civil Action No. 3:10-CV-01465, Amended Ruling Re: Defendants' Motion for Partial Summary Judgment, dated October 23, 2012 (Exception to immunity does not apply in negligent infliction of emotional distress claims based on allegations of excessive force, as there is no "failure to act").

In the context of negligent infliction claims against police officers, "unreasonable" is the equivalent of "unlawful".  See, e.g., *Silberberg v. Lynberg*, 186 F.Supp.2d 157 D.Conn.,2002.  Where the conduct of the officer at issue has been established to have been reasonable under the circumstances, plaintiff cannot maintain a negligent infliction claim.  See, e.g., *Rzayeva v. Foster*, 134 F.Supp. 2d 239 (D.Conn. 2001).

As has previously been stated, the Plaintiff cannot establish that the conduct of Sergeant Marques was unlawful.

Intentional Infliction of Emotional Distress

The Plaintiff cannot establish the requisite elements of intentional infliction of emotional distress. The elements of a claim for intentional infliction of emotional distress are well settled. "For [a party] to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to distress emotional distress or that he knew or should have known that emotional

distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the ... conduct was the cause of the [party's] distress; and (4) that the emotional distress sustained by the [party] was severe." *Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). All four elements must be established to prevail on a claim for intentional infliction of emotional distress. *Reed v. Signode Corp.*, 652 F.Supp. 129, 137 (D.Conn.1986); see also *Muniz v. Kravis*, 59 Conn.App. 704, 708-709, 757 A.2d 1207 (2000). The Plaintiff cannot establish that the alleged conduct was extreme and outrageous nor that her emotional distress is severe and summary judgment must therefore enter.

Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. *Ancona v. Manafort Bros.*, Inc., 56 Conn.App. 701, 712, 746 A.2d 184, cert. denied, 252 Conn. 954, 749 A.2d 1202 (2000). " 'Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!' ... *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443, 815 A.2d 119 (2003)." *Morrissey v. Yale University*, 268 Conn. 426, 428, 844 A.2d 853 (2004).

For all of the reasons discussed above, the lawful use of force to restrain the Plaintiff does not rise to the level of "extreme and outrageous."

## 10.   PROPOSED VOIR DIRE

Attached.

## 11.   PROPOSED JURY INSTRUCTIONS

Attached. The attached jury instructions may be subject to modification or amendment due to the Court's consideration of the anticipated evidentiary problems.

## 12.   PROPOSED VERDICT FORM

Attached.

{00747076.DOCX}

13.    **BRIEF DESCRIPTION OF THE CASE AND PARTIES**

**<u>Parties</u>**

Plaintiff:      Maryanne Zadrowksi

The Plaintiff sues the defendant officer, Richard Marques pursuant to 42 U.S.C. § 1983 for violations of her rights under the Fourth and Fourteenth Amendment . The Plaintiff also sues Richard Marques pursuant to the court's supplemental jurisdiction for claims arising under Sections 7, 8 and 9, Article First of the Connecticut Constitution; and tort claims of recklessness, assault/battery, false imprisonment/false arrest, and negligent or intentional infliction of emotional distress.

The Plaintiff sues the Town of Plainville pursuant to Sections 7-465 and 52-557n of the Connecticut General Statutes for municipal employee indemnification and municipal employee negligence liability, respectively.

Defendant:    Richard Marques

Richard Marques has been alleged to have violated the Plaintiff's Fourth Amendment right to be free from excessive force. Additionally the Plaintiff has named Sergeant Marques as the defendant in common law claims of Recklessness, Assault & Battery, False Imprisonment, Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress.

14.    **ANTICIPATED EVIDENTIARY PROBLEMS**

Objections to be filed after exhibits are exchanged.

THE PLAINTIFF,
MARYANNE ZADROWSKI

By:＿＿＿＿＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
A. Paul Spinella, Esq. (CT00078)
Spinella & Associates
One Lewis Street
Hartford, CT 06103
Facsimile: 860-728-4909
Phone No.: 860-728-4900
attorneys@spinella-law.com

{00747076.DOCX}

Federal Bar #: ct00078


THE DEFENDANTS,


By:_____/s/_____
        Russell N. Jarem, Esq./ct27848
        Gordon, Muir & Foley, LLP
        Ten Columbus Boulevard, Third Floor
        Hartford, CT 06106
        860-525-5361 (p)
        860-525-4849 (f)
        rjarem@gmflaw.com

{00747076.DOCX}